**Kay SANTAMAURO**

v.

**TAITO do BRASIL INDUSTRIA E COMERCIA LTDA., et al.**

**Civ. A. No. 83–5300.**

United States District Court, E.D. Louisiana.

May 24, 1984.

---

Harvey Rosenberg, Dallas, Tex., and Charles E. Cabibi, Sr., New Orleans, La., for plaintiff.

Michael S. Fawer and Bradley M. Smolkin, of Fawer, Brian, Hardy & Zatzkis, New Orleans, La., for defendants.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on motion of defendant, Abraham Kogan, to dismiss on the ground that venue in this district is improper in view of a forum selection clause and, alternatively, on the basis of *forum non conveniens*, 28 U.S.C. § 1404(a).[1] Considering the memoranda

1. The original complaint, since amended, named Michael Kogan, Abraham Kogan and Taito do Brasil Industria E Comercia Limitada (Taito) as defendants. On February 15, 1984, at a hearing to consider the original defendants' motion to dismiss, the Court granted the motion as to Michael Kogan because he was improperly served, and allowed the plaintiff to amend the complaint prior to ruling with respect to the other defendants. The amended complaint names only Abraham Kogan as a defendant, and counsel for plaintiff acknowledged at the

submitted by the parties, the record and the law applicable to defendant's motion, said motion is granted upon compliance with the conditions hereinafter set out, for the reasons that follow.

The dispute herein involves the conflicting claims of ownership of Fipermatic Industria E Comercia Limitada (Fipermatic), a limited liability business entity domiciled in Brazil and established under Brazilian law. Plaintiff is a Texas resident suing as executrix of the estate of her deceased husband, Anthony Santamauro, who entered into an agreement with one Yip Ying to purchase a 50% interest in Fipermatic. The agreement was executed in New York on June 17, 1983. Defendant and others claim to own the same interest in Fipermatic.

According to Fipermatic's Articles of Association and amendments thereto (the Articles), defendant, Mario G.P. Ferraz, and Taito do Brasil Industria E Comercia Limitada (Taito), a Brazilian company, have respective interests in Fipermatic of 35%, 25% and 40%. The Articles further indicate that Yip Ying is also the source of part of each of these interests, and that Ying had sold her entire interest in Fipermatic by February 1, 1981, thus prior to executing the agreement with plaintiff's husband. Ying contends that these earlier assignments were fraudulently made using an invalid power of attorney. In the amended complaint, plaintiff alleges that:

> The Defendant, Abraham Kogan, willfully, maliciously and fraudulently, and in controvention of law, claims the ownership of the stock of Fipermatic ... including the aforesaid fifty percent owned by complainant.

> The Defendant willfully, wantonly and fraudulently entered into a conspiracy with persons unknown to plaintiff to deprive plaintiff of her rightful ownership interest in Fipermatic ....

In moving for dismissal, defendant first contends that the forum selection clause incorporated in the agreement assigning Ying's interest to plaintiff's husband should govern the venue of this matter. The agreement, which is the sole basis of plaintiff's claim of ownership, states:

> The Court of the City of Manaus [State of Amazonas, Brazil] is herein elected, with the exclusion of any other, however privileged, to decide any and every conflict of interest which may arise from this present agreement, or from any legal matter relating to the business herein agreed upon.

A similar forum selection clause is contained in Fipermatic's Articles of Association, to which plaintiff is bound pursuant to the assignment of interest from Ying.

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), established a strong presumption in favor of enforcing a contractual forum selection clause, even one that would require an American citizen to pursue a claim abroad. Although *Bremen* arose in the admiralty context, its rationale is applicable elsewhere, and indeed has been applied in other contexts. *In re Fireman's Fund Insurance Companies*, 588 F.2d 93 (5th Cir.1979); *Hoffman v. Burroughs Corporation*, 571 F.Supp. 545 (N.D.Tex.1982). The burden is on the party resisting enforcement of the clause to prove that the choice was unreasonable, unfair or unjust, or to show that the clause is invalid by reason of fraud or overreaching or that enforcement would contravene a strong public policy of this forum. 92 S.Ct. at 1916. Plaintiff has made no such showing, and the Court finds that there is no basis on which it could conclude the clause is invalid.[2] The Court's conclusion is buttressed by the actions taken by plaintiff's husband prior to his death and

May 9, 1984 hearing that Taito was no longer a defendant. In this motion, defendant does not contest the Court's personal jurisdiction over him or venue pursuant to 28 U.S.C. § 1391.

2. The reasonableness of the forum selection clause in terms of the inconvenience of the parties and witnesses, the governing law and the availability of remedies in the chosen forum is discussed below in the context of *forum non conveniens*.

by Yip Ying; Ying and Anthony Santamauro filed separate suits in Brazil against Abraham Kogan, defendant herein, and others for acts that essentially form the basis of this suit.

Plaintiff contends, however, that the forum selection agreement between plaintiff's husband and Ying should not apply to a dispute between plaintiff and defendant, the latter not being a party to the agreement. Considering the nature of this dispute, we find this argument to lack merit. Because the subject matter of this suit is the conflicting claims of ownership of Fipermatic, the action arises directly from the documents that purport to grant or assign the conflicting interests in Fipermatics— the agreement between Ying and Mr. Santamauro, the Articles of Association and the amendments thereto. Each of these documents selects the same forum country for the adjudication of disputes arising therefrom: Brazil. In view of the fact that the Articles are binding on all shareholders, that plaintiff purports to be a shareholder-assignee through the agreement with Ying, and that the Articles and the agreement both select Brazil as the forum to hear disputes such as this one, we conclude that the clause is indeed applicable and that plaintiff voluntarily agreed to submit her claim regarding the ownership of Fipermatic to the courts in Brazil. Accordingly, plaintiff's claim is dismissed pursuant to *Bremen, supra,* and *In re Fireman's Fund, supra.* See also *Hoffman v. Burroughs Corporation, supra.*

▆▆▆ Apart from the forum selection clause, dismissal is warranted on the basis of *forum non conveniens,* 28 U.S.C. § 1404(a). Consideration of a motion to dismiss for *forum non conveniens* requires the Court to determine first the governing law. *Vaz Borralho v. Keydril Co.,* 696 F.2d 379 (5th Cir.1983). If American law applies, the Court should normally retain jurisdiction and proceed with the case. Applicable law in a diversity case such as this is determined by reference to Louisiana conflicts law. *Stickney v. Smith,* 693 F.2d 563 (5th Cir.1982). Louisiana applies

interest analysis, *Jagers v. Royalty Indemnity Co.,* 276 So.2d 309 (La.1973); *Champion v. Panel Era Mfg. Co.,* 410 So.2d 1230, 1237–38 (La.App.1982), under which the Court considers the following factors:

(a) The needs of the interstate system;

(b) The relevant policies of the forum;

(c) The relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue;

(d) The protection of justified expectations;

(e) The basic policies underlying the particular field of law;

(f) Certainty, predictability and uniformity of result; and

(g) Ease in the determination and application of the law to be applied.

Restatement (Second) of Conflicts of Laws, § 6 (1971), quoted in *Jagers, supra.* Contacts to be taken account in applying the above stated factors include:

(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

(d) the place where the relationship, if any, between the parties is centered.

The contacts in this case point strongly to applying Brazilian law. As previously stated, the subject matter of this suit is the ownership of a limited liability business entity that was established in Brazil according to Brazilian law, and is currently domiciled and doing business in Brazil. Further, the focus of the activity giving rise to plaintiff's claim is Brazil: that is where defendant resides; where the Articles of Association were amended and registered with the appropriate Brazilian authority; where Ying was to perform her obligation to transfer her ownership interest in Fipermatic to plaintiff's husband; where the documents assigning Ying's interest to defendant's assignor and others were executed; and where the conspiracy to defraud plaintiff allegedly occurred. Brazil

has a substantial interest in resolving disputes regarding the ownership of its business companies, and in regulating conduct within its borders, particularly conduct involving its own citizens.

That plaintiff is an American citizen is significant; the United States has an obvious interest in protecting the rights of its citizens in transactions involving foreign entities. But this interest is insubstantial compared to the interests of Brazil.[3] We conclude that Brazilian law applies to the matter herein.

Having determined that Brazilian law governs, we next consider the accessibility of the Brazilian courts:

> Ordinarily, this requirement will be satisfied when the defendant is "amendable to process" in the other jurisdiction. In rare circumstances, however, where the remedy offered by the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute. (Citations omitted.)

*Vaz Borralho, supra* at 391, quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419 (1981). Defendant has demonstrated that the Brazilian courts are open to plaintiff. Defendant is a resident of Brazil, and has stipulated that he would submit himself to the jurisdiction of the Brazilian courts if the action were pursued there. Further, Defendant's Exhibit C, Article 88 of the Brazilian Code of Civil Procedure, and Exhibit G, Article 12 of the Brazilian Civil Code, indicate the very strong likelihood that the Brazilian courts would accept jurisdiction over this matter.

As to the adequacy of Brazilian substantive law, the presumption is that such provides an adequate remedy to plaintiff, *Vaz Borralho, supra* at 392, and plaintiff has

provided no evidence to the contrary; nor is the Court aware of conditions in the foreign forum that plainly demonstrate that the plaintiff is very unlikely to obtain basic justice there.

■ We next consider the convenience of the parties under the analysis required by *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *Gilbert* asks the Court to weigh both private interest factors affecting the convenience of the parties and witnesses and public interest factors affecting the convenience of the forum. There is ordinarily a strong presumption in favor of the plaintiff's choice of forum particularly when the plaintiff is American and the alternative forum is foreign, and this presumption can be overcome only when the private and public interest factors clearly point toward trial in the alternative forum. An American citizen's forum choice, however, is not dispositive. *Piper Aircraft, supra* 102 S.Ct. at 265, 266 n. 23.

The private interest factors include the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; and the cost of obtaining attendance of willing witnesses. These factors point very strongly in favor of the Brazilian forum. The vast preponderance of the relevant evidence, both the documents upon which the parties will rely to establish or to refute their respective ownership interests, and in particular the witnesses, is located in Brazil. Although transporting the records of Fipermatic kept by the Commercial Registry of the State of Amazonas, Brazil, may not be very costly or inconvenient, if such is allowed to leave the country, transporting the witnesses, all of whom, except Ying, reside in Brazil according to the facts as thus far adduced, will be extremely costly and inconvenient to both parties if the trial is in New Orleans. Additionally, because these witnesses reside in Brazil, they are

---

**3.** The only contact with this particular jurisdiction was created when defendant was served process in New Orleans while attending a convention. We further regard the situs of the execution of the agreement between Ying and plaintiff's husband as incidential to this particular action.

located beyond the reach of compulsory process, thereby making their testimony difficult to obtain if they are unwilling to provide it voluntarily.[4]

Also of great significance are the problems posed by the inability to implead potential third party defendants. The Court can reasonably anticipate that defendant will want to sue his purported assignor, Mario G.P. Ferraz, who allegedly purchased his interest from Yip Ying.

The public interest factors include the effect of this case on the Court's calendar; the administrative difficulties attendant in trying a case applying foreign law with which the Court is unfamiliar; and the local interest in having localized controversies decided at home. While the first of these three factors does not appear to weigh heavily against trying the lawsuit here—it only contributes to an otherwise overcrowded docket—the other two substantially favor Brazil. Our unfamiliarity with Brazilian law and with the Portuguese language would greatly impair the Court's ability to preside over the proceedings, and would greatly increase the possibility of the Court committing error; trial here would also require costly translations of Brazilian statutory and case law, depositions, testimony and documents. And because the dispute here involves conflicting claims of ownership of a Brazilian company, the local interest really lies in Brazil, not in the United States, even considering the presence of an American plaintiff.

■ Since the Court concludes that both the private and public interest convenience factors of *Gilbert* point strongly in favor of trying this matter in Brazil, the matter is dismissed on grounds of *forum non conveniens*, 28 U.S.C. § 1404(a) too, subject to the conditions that will hereinafter be set out.

Tracing the chain of the title of the 50% interest in Fipermatic once held by Yip Ying and allegedly conveyed to plaintiff's husband reveals that several other persons over whom the Court could not exercise personal jurisdiction have interests in this matter that could be greatly prejudiced in their absence, and whose absence will also prejudice defendant. According to the Articles of Association and the amendments thereto, Ying's complete interest in Fipermatic was assigned to Mario G.P. Ferraz and Armando Ferraz in transactions for which Lin Chi Ang exercised Ying's power of attorney. Mario Ferraz obtained approximately 30% of Fipermatic from Ying, and Armando Ferraz approximately 20%. At the same time, the two also acquired from other assignors, namely Chan Thei Guang and Lam Lung Bin, most of the remaining 50% interest in the company, with approximately .25% assigned to Antonio H.M. Nasciento, who subsequently sold his interest to Mario Ferraz on September 30, 1981. Following Nasciento's sale to Mario Ferraz, and a recapitalization of Fipermatic's stock on June 23, 1981, Mario Ferraz held 12,000,000 of a total of 20,000,000 shares, and Armando Ferraz held the remaining 8,000,000 shares. On January 6, 1982, Mario Ferraz sold 7,000,000 shares to defendant Abraham Kogan, retaining 8,000,000, and Armando Ferraz withdrew from the company, selling his complete interest of 8,000,000 shares to Taito. According to the most recent amendments to the Articles, these transactions left Mario Ferraz with a 25% interest in Fipermatic, defendant 35%, and Taito 40%.

As is evident from the distribution of ownership interests among the three current owners, a judgment rendered against Abraham Kogan only will entitle plaintiff to a 35% interest in Fipermatic, less than

---

**4.** Although the Court cannot determine at this time who the witnesses will be, we presume that they will include Yip Ying; the present owners of Fipermatic according to the Articles of Association (Mario G.P. Ferraz, representatives from Taito, and defendant); and those from whom the present owners claim they purchased their interests, including Armando P. Ferraz and An-

tonio H.N. Nasciento; and Lin Chi Ang, who exercised Yip Ying's power of attorney in conveying Ying's interest in Fipermatic to Mario G.P. Ferraz and Armando Ferraz. From the exhibits presently before the Court, we conclude that all of the above, with the exception of Ying, reside in Brazil.

the 50% interest she claims by virtue of the agreement between her husband and Yip Ying. Consistent with the general interests of Rule 19 to avoid repeated lawsuits on the same subject and to provide parties with complete and effective relief in a single action, it is desirable for plaintiff to proceed in one action against another purported owner of Fipermatic, i.e., either Taito or Mario Ferraz, both of whom have some shares traceable to Yip Ying.

Apart from the problem of plaintiff being able to obtain full and effective relief from a judgment against defendant Abraham Kogan only, more pressing issues concern the effect of such a judgment on defendant himself, and on the interests of those who are not presently joined in the litigation. As revealed in the pleadings and in plaintiff's memoranda in opposition to the motions to dismiss, plaintiff claims that defendant's ownership interest is invalid because it derives from fraudulent assignments between Ying and Mario and Armando Ferraz in which Lin Chi Ang exercised Ying's power of attorney allegedly without her permission. Since defendant's interest in Fipermatic derives from Mario Ferraz, who obtained his from Ying, a judgment in favor of plaintiff requires a judicial determination that the assignment from Ying to Mario Ferraz was invalid. Because *res judicata* principles would prevent this determination from being binding on Mario Ferraz as a nonparty to this suit, the issue would have to be relitigated in a separate action between Ferraz and defendant herein. Defendant is thus faced with the possibility of multiple lawsuits and inconsistent judgments. Under Rule 19(a), joinder of Ferraz is desirable to protect defendant, and to avoid multiple suits on the same subject.

A determination invalidating the Mario Ferraz-Ying assignment would also threaten the interests of persons presently absent from the suit even though the determination would not be binding on these nonparties in a technical sense. First, since the determination would mean that Mario Ferraz improperly held the portion of his ownership interest assigned from Ying, then all of Fipermatic's transactions for which Ferraz' authority was necessary would also be of doubtful validity, including the June 23, 1981 recapitalization, when Fipermatic's stock increased from 4,050,668 to 20,000,000 shares. Obviously, this would put a cloud on the interests of persons who owned Fipermatic from that date forward. Second, since Lin Chi Ang also acted as power of attorney in conveying Ying's interest to Armando Ferraz, then the validity of Armando Ferraz' title, his assignment to Taito, and Taito's title in Fipermatic would also be in doubt after a judgment adverse to defendant. Subsequent litigation would then be necessary to resolve these issues definitively. In the interim, however, the operations of Fipermatic would be effectively crippled. For these reasons, joinder of Armando, Mario Ferraz and Taito is desirable under Rule 19(a).

Since neither Armando Ferraz nor Mario Ferraz has sufficient contacts with Louisiana for the Court to exercise personal jurisdiction over either of them, they cannot be joined in this action.[5] Having concluded that judgment rendered in the absence of Mario and Armando Ferraz would be prejudicial to them and to defendant, we next consider, under Rule 19(b), "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided," and whether a judgment ren-

**5.** On the basis of the record presently before the Court, we would also conclude that Taito's contacts with the state are also insufficient to satisfy either the Louisiana long-arm statute, La.R.S. 13:3201; or the minimum contacts test of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny, in particular, *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Whether the

Court could exercise personal jurisdiction over Taito by application of the doctrine of transient jurisdiction, under which personal service within a court's geographical area establishes a court's personal jurisdiction over a defendant, is an issue that we do not decide. See *Aluminal Industries, Inc. v. Newton Commercial Association,* 89 F.R.D. 326 (S.D.N.Y.1980); and 4 Wright & Miller, § 1064 (1983 Pocket Part).

dered in their absence will be adequate. The parties have suggested no way in which to accomplish these objectives, and we are unable to fashion one ourselves. Since the litigation involves conflicting claims of ownership, the Court cannot conceive of a decree that would effectively settle any controversy between plaintiff and defendant without working substantial practical injury to the interests of the non-party and the defendant himself. *See Schutten v. Shell Oil Co.,* 421 F.2d 869 (5th Cir.1970).

Consistent with our previous determinations regarding the forum selection clause and forum *non conveniens,* the alternative available to the plaintiff is to pursue this matter in Brazil where the courts can exercise jurisdiction over the defendant and presumably the nonparties, thereby resolving all the issues in one suit and avoiding the problems previously discussed. Thus, we conclude that in "equity and good conscience," this matter should not proceed without joinder of the aforesaid nonparties and that dismissal is appropriate under Rule 19.

Accordingly, for the foregoing reasons, this matter is hereby DISMISSED upon compliance with the following conditions: that defendant submit to service of process and jurisdiction in the appropriate Brazilian court within ninety (90) days; that defendant formally waive any statute of limitations defense that has matured since the commencement of this action; that defendant agree to make available in Brazil all relevant witnesses and documents within his control and that any depositions, answers to interrogatories and the like filed herein may be used in the Brazilian proceedings to the same extent as if they had originated therein; that defendant formally agree in the Brazilian proceeding to satisfy any final judgment rendered by such court; and that if defendant should fail to promptly meet any of these conditions, the district court will resume jurisdiction over the case. If plaintiff does not file suit in the appropriate Brazilian court within ninety (90) days after this date, or if suit is timely filed, defendant has complied with all of the conditions heretofore set out, and the appropriate Brazilian court has not finally declined jurisdiction, dismissal can be made final by motion of the defendant. However, should the appropriate Brazilian court subsequently finally decline jurisdiction over the case, it may be reopened by plaintiffs in this Court, if it were timely filed in Brazil in accordance herewith, and limitations will not run during the period from the initial filing herein until ninety (90) days after the Brazilian court's declining jurisdiction. Notice of a motion to make the conditional order final should be given to plaintiff, and plaintiff shall have an opportunity to oppose the motion on grounds of noncompliance only.