945 F.2d 398
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Carl NUTTER, Plaintiff-Appellant,
v.
RENTS, INCORPORATED, a Kentucky corporation, Defendant-Appellee.
 No. 90-2493.
 United States Court of Appeals, Fourth Circuit.
 Argued May 6, 1991.
Decided Oct. 1, 1991.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (CA-90-24-2)
 Argued: Paul Anthony Ryker, Huntington, W.Va., for appellant; Steven Leftridge Thomas, Kay, Casto, Chaney, Love & Wise, Charleston, W.Va., for appellee.
 On Brief: Tracy L. Webb, Kay, Casto, Chaney, Love & Wise, Charleston, W.Va., for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before PHILLIPS, Circuit Judge, CHAPMAN, Senior Circuit Judge, and RICHARD B. KELLAM, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PHILLIPS, Circuit Judge:
 
 
 1
 Carl Nutter appeals the district court's dismissal without prejudice of his declaratory judgment action against New Rents Incorporated (New Rents) on the basis of a forum selection clause in a contract which was the subject of the action. He challenges both the court's upholding of its diversity removal jurisdiction, and the enforceability of the forum selection clause. We affirm.
 
 
 2
 * Nutter was the president and 20% shareholder in Electronic Rental Services Corporation (Electronic). Electronic is a Louisiana corporation that operated rent-to-own business in Kentucky and West Virginia. In September 1988, Nutter discussed the possibility of selling Electronic's assets with Carlos Sardinia, the president and principal shareholder of New Rents. After obtaining information he needed about Electronic, Sardinia told Nutter of his interest in purchasing Electronic's assets. Nutter then informed Robert Guidry, the 80% shareholder in Electronic, of New Rents' wish to purchase Electronic. Guidry and Sardinia then negotiated an acceptable purchase price. According to Sardinia's affidavit, these negotiations took place mostly in Kentucky and Louisiana. On December 12, 1988, Electronic (as seller, by Robert Guidry), New Rents (as purchaser), Guidry, Nutter, and Sardinia signed an agreement for the sale of all of Electronic's assets to New Rents.
 
 
 3
 The agreement contained an anti-competition clause under which Electronic, Guidry, and Nutter covenanted not to "conduct[ ] a rent-toown business similar to that involved in this transaction" in the four cities in which Electronic operated the stores it was selling to New Rents. This provision was valued at $50,000. The consideration for the entire sale of assets was $825,000.
 
 
 4
 The agreement contained a choice of law and choice of forum clause which provided in relevant part:
 
 
 5
 Governing Law and Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana. If a claim under this Agreement is asserted in any legal proceedings, all parties irrevocably submit to the jurisdiction of the Civil District Court of the Parish of Orleans, State of Louisiana, and the United States District Court, Eastern District of Louisiana, and irrevocably agree that venue for any such action shall be in New Orleans, Louisiana.
 
 
 6
 J.A. at 28. The parties agree that this clause was included at Guidry's request.
 
 
 7
 After the signing of the agreement, Nutter worked for New Rents until April 1989, when his employment was terminated. Nutter was unemployed until August 1989, when he accepted a job with another furniture and appliance rental company called National TV & Appliance. National hired Nutter as a supervisory employee to help it open an outlet in Charleston, West Virginia. This new store was opened in September 1989, about a mile from the New Rents store in Charleston. Because of Nutter's activities, New Rents contacted counsel in Louisiana, who sent Nutter and Electronic a letter stating that Nutter had violated the anti-competition clause and demanding that Nutter pay New Rents $50,000 (described in the letter as "a reduced estimate of the damages New Rents has suffered as a result of your conduct"). J.A. at 35. New Rents informed Nutter that if it did not receive compensation in the form of a payment or a setoff from the remainder of the contract price, it would file legal action against Nutter. Id.
 
 
 8
 After receiving this letter, Nutter commenced the present action against New Rents in the circuit court for Kanawha County, West Virginia, seeking a declaratory judgment that he was not in violation of the anti-competition clause. New Rents removed the action to federal district court asserting that the amount in controversy exceeded $50,000, and that there was diversity of citizenship between Nutter and New Rents. Nutter responded with a motion to remand challenging both prongs of New Rents' asserted basis for diversity jurisdiction. New Rents then filed a motion for leave to amend its notice of removal in order specifically to state that Kentucky was its principal place of business. In response, Nutter filed a motion to withdraw his motion to remand. The district court granted Nutter's motion to withdraw, finding that it did have jurisdiction over his declaratory judgment action. The court also granted New Rents' motion to dismiss, without prejudice to Nutter to file his action in the proper forum, based upon the forum-selection clause in the sales agreement.
 
 
 9
 This appeal by Nutter followed.
 
 II
 
 10
 Nutter challenges the district court's ruling that removal diversity jurisdiction existed, and its holding that the action in West Virginia was barred by the forum selection clause.
 
 
 11
 * Nutter contends preliminarily that New Rents' notice of removal was technically deficient because it failed to state that Kentucky was New Rents' principal place of business. He argues that since New Rents' motion to amend its notice of removal was not within the 30day time limit of 28 U.S.C. § 1446(b), removal jurisdiction was not established.
 
 
 12
 We disagree, and apply the majority rule that an amendment which merely perfects a technically defective jurisdictional allegation in a timely filed removal petition may be allowed after the 30-day removal period. Under 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." This was such an amendment. New Rents' original notice of removal identified diversity as the ground for removal, and stated that New Rents was a "Kentucky corporation." The amendment simply clarified this by specifying that Kentucky was New Rents' "principal place of business." To the extent amendment was required, the one made was properly allowed after expiration of the 30-day period. See Goforth v. Allstate Ins. Co., 213 F.Supp. 595 (W.D.N.C.1963) ("jurisdiction ought to depend more upon the truth of defendant's allegation of diversity than upon the ... choice of verbiage").
 
 
 13
 Furthermore, Nutter had been allowed to withdraw his remand motion before the court ruled on the jurisdictional challenge, and the case then proceeded to final judgment. Technical defects in a notice to remove can be waived, especially when a case proceeds to final judgment. See Able v. Upjohn Co., 829 F.2d 1330, 1333-34 (4th Cir.1987) ("Where a matter has proceeded to judgment on the merits and principles of federal jurisdiction and fairness to parties remain uncompromised, to disturb the judgment on the basis of a defect in the initial removal would be a waste of judicial resources."). Although Able involved waiver by a plaintiff who failed to pursue an interlocutory appeal under 28 U.S.C. § 1292(b) when his motion to remand was denied, the same principles are applicable here. We therefore conclude that any technical defect in the petition for removal was either properly amended to cure the defect, or in any event was waived. That leaves only the question whether the district court properly found the facts establishing diversity jurisdiction.
 
 
 14
 Nutter challenges the district court's finding that the diversity of citizenship and amount in controversy requirements were satisfied. He first contends that Kentucky was not shown to be New Rents' principal place of business. We disagree. We have held that there are
 
 
 15
 two divergent approaches to ascertaining the "principal place of business" of a corporation under § 1332(c) that may be found in the authorities. One approach makes the "home office," or place where the corporation's officers direct, control, and coordinate its activities, determinative [known as the "nerve center" test]. The other looks to the place where the bulk of corporate activity takes place [known as the "place of operations" test].... While intimating no view as to which of these positions this court will ultimately adopt, we suggest that, whichever line of authority the district court finds more convincing, it could advance the ultimate disposition of this question considerably by making findings of fact which are material to both theories.
 
 
 16
 Mullins v. Beatrice Pocahontas Co., 489 F.2d 260, 262 (4th Cir.1974) (citations omitted). Nutter cites the decision in Mitchell v. Monongahela Power Co., 602 F.Supp. 756 (S.D.W.Va.1985) for the proposition that the "place of operations" test is better suited for determining New Rents' principal place of business. In Mitchell, Judge Haden commented that "[t]he nerve center analysis, focusing attention on the decision making process within the corporation, is better suited where there is no clear center of corporate business activity." 602 F.Supp. at 759. Considering the facts (as described below) on the record about New Rents, under this standard the nerve center analysis would seem to be appropriate in the present case.
 
 
 17
 At the time New Rents removed the case to federal court, it had three stores in Kentucky, three stores in West Virginia, and one store in Ohio. The district court had before it both Nutter's and Sardinia's affidavits relating to the jurisdictional issue. In his affidavit, Nutter stated that
 
 
 18
 I am reasonably certain that the three West Virginia outlets produced more gross earning by the time this suit was filed than all of the other outlets combined. I am also reasonably certain that at the time this suit was filed the three West Virginia outlets represented the majority of total tangible assets of New Rents as well as the majority of its employees and overall contact with the public. I am even more confident that such was the case in all respects at the time I left New Rents in April, 1989.
 
 
 19
 J.A. at 63. As New Rents points out, Nutter left employment with New Rents before the two additional Kentucky stores were opened, so he has little basis for asserting that he is "reasonably certain" about information relating to these two stores. Also, at the time this suit was filed, Nutter had not been employed by New Rents for eight months.
 
 
 20
 New Rents, therefore, asserts that the affidavit of Carlos Sardinia, the president and principal shareholder of New Rents, provides more reliable information about New Rents' principal place of business. Sardinia stated that:
 
 
 21
 As of December 8, 1989, New Rents, Inc. owned seven Rent-to-Own stores. Three of these stores are located in Kentucky, three of these stores are located in West Virginia and one of these stores is located in Ohio. The corporate headquarters of New Rents, Inc. is located in the State of Kentucky. Based upon this, I consider Kentucky to be the principal place of business of New Rents, Inc. as of December 8, 1989.
 
 
 22
 J.A. at 78. Sardinia added in his deposition that All the bookkeeping, all the accounting, all the other-actually all the business not related directly to the customers [is] conducted out of Kentucky.
 
 
 23
 All the advertising is booked out of there. All the-everything is bought from there. All the purchasing. That's just really where we do business. We have different locations across the country. But that's where we operate out of.
 
 
 24
 J.A. at 378. The situation in the present case, where there were three stores in both Kentucky and West Virginia, is distinguishable from the situation in Mitchell, where the court explained
 
 
 25
 Because Monongahela Power generates virtually all of its revenue from the sale of electricity to West Virginia customers, transacts business almost exclusively in West Virginia and, with few exceptions, locates all of its employees in West Virginia, the Court finds that its operations are definitely not "far flung and varied" and that the place of operations test is, therefore, controlling in deciding the situs of Monongahela Power's principal place of business.... These same facts equally compel the Court to find that Monongahela Power's principal (and, essentially, only) place of business is in West Virginia.
 
 
 26
 602 F.Supp. at 760. In addition, the Mitchell court cited evidence that Monongahela Power considered its headquarters and principal place of business to be in West Virginia. Id. at 759. In contrast, in a situation where a corporation has three stores in West Virginia and three stores in Kentucky, it makes sense to use the nerve center test and to look primarily at the location of corporate headquarters.[1] The district court did not err in finding on this basis that New Rents' principal place of business was in Kentucky.
 
 
 27
 Nutter also challenges the district court's finding that the amount in controversy exceeded $50,000, as required by 28 U.S.C. § 1332. Nutter contends that his declaratory judgment action seeks no damages, and that New Rents has not proven that the actual amount at issue exceeds the $50,000 valuation of the anti-competition provision of the agreement. We disagree.
 
 
 28
 When examining the amount in controversy in a declaratory judgment action, "[t]he amount in controversy is the pecuniary result to either party which that judgment would produce." Government Employees Insurance Co. v. Lally, 327 F.2d 568, 569 (4th Cir.1964). When a plaintiff brings a claim asserting a certain amount in controversy, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). Here, Nutter's action is a preemptive one in contemplation of New Rents' threatened suit in Louisiana. It is therefore appropriate to gauge the amount in controversy by reference to the amount involved in New Rents' threatened action which Nutter's first-strike action was designed to forestall. New Rents' letter threatening action demanded $50,000, referring to it as "a reduced estimate of the damages that New Rents has suffered as a result of your conduct." J.A. at 35. Additionally, in its answer to Nutter's complaint, New Rents asserted a counterclaim for the $50,000 in addition to damages for tortious interference with contract and misappropriation of trade secrets. J.A. at 119-120. The district court did not err in finding on this basis that the amount in controversy exceeded $50,000.
 
 
 29
 We therefore affirm the district court's conclusion that federal jurisdiction over this action had been established.
 
 III
 
 30
 Nutter next challenges the district court's dismissal of his action as improperly filed under the forum selection clause. He claims that the clause was not enforceable under applicable law.
 
 
 31
 The first question is the law that would apply were the action properly brought in West Virginia. See Leasewell, Ltd. v. Jake Shelton Ford, Inc., 423 F.Supp. 1011, 1014 (S.D.W.Va.1976). In this diversity action, we apply the conflicts of law rules of West Virginia, the state in which the district court sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). The West Virginia Supreme Court of Appeals recently explained that:
 
 
 32
 Our traditional contract conflict rule gives substantial deference to the state where the contract is made and where it is to be performed, assuming both incidents occur in the same state. This rule is subject to two qualifications: (1) that the parties have not made a choice of applicable law in the contract itself; and (2) that the law of the other state does not offend our public policy.
 
 
 33
 Lee v. Saliga, 373 S.E.2d 345, 351 (W.Va.1988).
 
 
 34
 Here, the agreement between New Rents and Electronic contained a choice of law clause which provides that "[t]his agreement shall be governed by and construed in accordance with the laws of the State of Louisiana." J.A. at 28. First, we must determine whether this clause was meant to cover the question of the validity of the choice of forum clause as well as matters of interpretation. Given the broad language of the clause, we find that the parties intended that Louisiana law govern questions of validity of contract provisions as well as questions of substantive interpretation.
 
 
 35
 However, Nutter contends that although West Virginia generally recognizes choice of law clauses, it would not enforce the clause in this case. Both parties agree that the enforceability of the choice of law clause is governed by the West Virginia Supreme Court of Appeal's decision in General Electric Co. v. Keyser, 275 S.E.2d 289 (W.Va.1981). In Keyser, the Court held that choice of law clauses are enforceable, except
 
 
 36
 when the contract bears no substantial relationship with the jurisdiction whose laws the parties have chosen to govern the agreement, or when the application of that law would offend the public policy of this state. Id. at 290.
 
 
 37
 Nutter argues that there was not a substantial relationship between Louisiana and the agreement. The district court disagreed, citing the following factors as proof of a "substantial relationship":
 
 
 38
 Louisiana was both a primary situs of substantial negotiations between the signatories to the contract and was the state of incorporation of the seller, Electronic. Robert Guidry, the majority stockholder in Electronic and signatory to the agreement, was and is a resident of Louisiana and there is no dispute that Guidry actively sought, as part of the bargain negotiated and agreed upon by the contracting parties, the choice of law provision at issue. Moreover, payments to Electronic, as the seller under the agreement, are forwarded to Louisiana, a fact which the Keyser court suggested would "weigh heavily" in determining whether Louisiana has the requisite "substantial relationship" to the agreement at issue.
 
 
 39
 J.A. at 421. Nutter claims that this relationship has nothing to do with him, as he took no part in the negotiations in Louisiana. However, Nutter's position as president and 20% shareholder in Electronic, the fact that he acknowledges that he saw a draft of the agreement before signing it, and the fact that he did sign the agreement all militate in favor of enforcing the choice of law clause. Also, the choice of law provision was included at Guidry's insistence, and therefore it does not unfairly benefit New Rents. We therefore find the choice of law clause enforceable.
 
 
 40
 This leads to the question whether the choice of forum clause is valid under Louisiana law. The district court found that Louisiana has adopted the United States Supreme Court's standards for determining the enforceability of forum selection clauses as articulated in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972). Although it is not entirely clear how Louisiana courts treat forum selection clauses,[2] this conclusion appears to be correct. Despite the lack of Louisiana state authority on point, we are persuaded that Louisiana would follow "the modern view" that forum selection clauses are enforceable unless they are unreasonable or unjust. See Leasewell, Ltd. v. Jake Shelton Ford, Inc., 423 F.Supp. 1011, 1015 (S.D.W.Va.1976). Because Louisiana's law reflects "Louisiana's longstanding view that parties have the utmost freedom to contract," Clarkco Contractors, Inc. v. Texas Eastern Gas Pipeline Co., 615 F.Supp. 775, 778 (M.D.La.1985), we believe Louisiana would follow the Supreme Court's holding in M/S Bremen that forum selection clauses are presumptively valid unless affected by "fraud, undue influence, or overweening bargaining power." M/S Bremen, 407 U.S. at 12-13.
 
 
 41
 Nutter contends that the Supreme Court's decision in Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988) makes the issue of forum selection clause enforceability one of federal law, and that therefore the district court should have applied the standards articulated in Stewart to the extent that they differed from the M/S Bremen test. This argument is misplaced, however, because Stewart involved a motion to transfer under 28 U.S.C. § 1404(a). The Stewart Court found that the enforceability of the forum selection clause presented an issue of a federal law in that context because "Congress has directed that multiple considerations govern transfer within the federal court system, and a state policy focusing on a single concern or a subset of the factors identified in § 1404(a) would defeat that command." Id. at 31. Here, New Rents is not trying to transfer the case within the federal system. New Rents simply filed a motion to dismiss based on the forum selection clause in the contract, contending that the proper forum was a court of Louisiana. This case does not involve a federal statute containing its own standards for determining whether an action should be transferred or dismissed. The district court correctly determined that the enforceability of the forum selection clause was a matter of state law, in this case Louisiana law.
 
 
 42
 Nutter has failed to show that there was any "fraud, undue influence, or overweening bargaining power" in the negotiation of the agreement between Electronic and New Rents. M/S Bremen, 407 U.S. at 12-13. The forum selection clause is reasonable, considering that Louisiana law governs the contract, payments were made in Louisiana and much of the negotiations took place in Louisiana. Also, the provision was for Electronic's, not New Rents' benefit, and Nutter was the president and 20% shareholder of Electronic, which was incorporated in Louisiana. The fact that it was Guidry rather than Nutter himself who requested the forum selection clause is irrelevant, given that Guidry and Nutter were officers of the same corporation. Because Nutter has not shown that the forum selection clause was fraudulent or unreasonable, the district court did not err in enforcing the forum selection clause by dismissing Nutter's action without prejudice.
 
 
 43
 AFFIRMED.
 
 
 44
 CHAPMAN, Senior Circuit Judge, and RICHARD B. KELLAM, District Judge, joined.
 
 
 
 [1]
 Nutter complains that New Rents refused to answer interrogatories which would have given Nutter the chance to support his claims about the West Virginia stores with statistical evidence. Nutter is correct that New Rents refused to answer these interrogatories, J.A. at 170-71, claiming that they were "not relevant to the subject matter of this action." However, even if Nutter could come up with some evidence that the West Virginia stores earned more than the Kentucky stores, both states have three stores and the difference in profit would not overcome the fact that the "nerve center" of New Rents' corporate operations is in Kentucky
 
 
 [2]
 The district court did not cite any state authority on the issue, and one of the federal district court cases it cited involved a motion to transfer pursuant to 28 U.S.C. § 1406(a) and 1401(a), which makes it distinguishable from the present case. Clarkco Contractors, Inc. v. Texas Eastern Gas Pipeline Co., 615 F.Supp. 775, 776 (M.D.La.1985). In Santamauro v. Taito do Brasil Industria E Comercia Ltda., 587 F.Supp. 1312 (E.D.La.1984), another case cited by the district court, the District Court for the Eastern District of Louisiana stated "[a]lthough Bremen arose in the admiralty context, its rationale is applicable elsewhere, and indeed has been applied in other contexts." Id. at 1314. The Santamauro court then applied the M/S Bremen standard without citing any Louisiana law