**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**Raymond C. LOUTH, et al., Defendants.**

**No. CIV.A.98–0085–C.**

United States District Court, W.D. Virginia, Charlottesville Division.

March 16, 1999.

Howard J. Beck, Jr., Gentry, Locke, Rakes & Moore, Simon Delano Roberts Moore, Jason G. Moyers, Gentry, Locke, Rakes & Moore, Roanoke, VA, for National Union Fire Insurance Co. of Pittsburgh, PA, plaintiff.

Garrett M. Smith, Edward Bennett Lowry, Michie, Hamlett, Lowry, Rasmussen & Tweel, P.C., Charlottesville, VA, for Raymond C. Louth, Robert G. Steinbracher, John G. Williams and George Bolton, defendants.

H. Dill Battle, III, McGuire, Woods, Battle & Boothe, Charlottesville, VA, David F. Dabbs, McGuire, Woods, Battle & Boothe, LLP, Richmond, VA, for LaRocco Enterprises, Inc., Greenbrier Architectural Woodwork Employee Ben. Plan and Crutchfield Corp., defendants.

Daniel Simpson Brown, Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA, for Maid Bess Corp, and Maid Bess Corp. Health Care Plan, defendants.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

This matter comes before the court on defendants' objections to the December 21, 1998 Report and Recommendation of United States Magistrate Judge B. Waugh Crigler.[1] The Magistrate's Report recommends granting plaintiff's motion to remand the case to the Circuit Court for the City of Charlottesville, where it was originally filed.

For the reasons stated below, the court adopts the Magistrate Judge's recommendation that the case be remanded. Plaintiff's claims are based on state law governing contracts and insurance and are not sufficiently related to any employee benefit plan so as to be preempted by the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1001, *et seq.*

## I.

Plaintiff brought this action seeking declaratory relief in Charlottesville Circuit Court on August 12, 1998. Defendants are various employers and unions[2] which engaged Duke Benefit Services ("DBS") to serve as a third party administrator ("TPA") of their employee benefit plans. DBS was responsible for collecting advance payments from sponsors of the employee benefit plans, holding those payments in trust, and then using them to satisfy claims of plan beneficiaries or to pay insurance premiums. Plaintiff National Union, in turn, served as insurer to DBS, which held a "Miscellaneous Professional Liability Policy" ("the policy') covering certain claims made against DBS between April 14, 1996 and April 14, 1997.

DBS and at least one of these defendants are parties to another action pending in this division of the United States District Court for the Western District of Virginia. The Trustees of Sheet Metal Workers Local No. 100 ("Trustees"), who are defendants in this case, are the plaintiffs in that previously-filed federal action, seeking recovery from DBS for alleged removal and commingling of plan funds. DBS notified National Union of the claims underlying that federal cause of action in 1996. National Union disputed DBS's assertion that the policy covered such claims, but ultimately decided to settle with DBS for $150,000.00 in exchange for a release from any further claims under the policy. The defendants in this case did not become aware of the National Union policy or the settlement until 1998.[3]

Plaintiff filed the present action in state court seeking a judgment declaring that: (1) defendants lack standing to maintain any action based on the policy; (2) the policy is void by reason of material misrep-

---

1. The court referred this action to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). This court must now undertake de novo review of the case under *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir.1982).

2. The defendants include: Richard Louth and other Trustees of the Sheet Metal Workers Local No. 100, Richmond Area Health Fund ("Trustees"), LaRocco Enterprises ("LaRocco"), Greenbrier Architectural Woodwork Employee Benefit Plan ("Greenbrier"); ARC Electric Inc. ("ARC"), Board of Supervisors and Board of Education of Isle of Wight County ("Isle of Wight"), Maid Bess Corporation and Maid Bess Corporation Health Care Plan ("Maid Bess"), and Crutchfield.

3. DBS is also in the midst of bankruptcy proceedings in the Western District of Virginia. The defendants' well-founded fear that they will never obtain the relief sought directly from DBS doubtlessly fuels their efforts to seek that relief directly from National Union.

resentations or fraud in the inducement by DBS; and, alternatively, (3) even if the policy is valid, it does not cover claims made by the defendants. Several of the defendants answered National Union's petition in state court. However, one defendant, the Trustees, filed a notice of removal rather than answering the complaint. Prior to filing the notice of removal, counsel for the Trustees allegedly obtained either oral or written consent from all other defendants who had been served. However, none of the other defendants signed the Trustees' removal petition. As a result, the court was directly notified of consent to removal only by some, not all, defendants within thirty days of those defendants being served with National Union's state court complaint.[4]

The Magistrate Judge filed his Report on December 21, 1998, recommending remand based on his findings that (1) National Union's claim is a "garden variety" state law claim, not an ERISA claim; and (2) even if jurisdiction lies in federal court, there was a lack of complete consent to removal. Defendants filed their objections to the Magistrate Judge's Report on January 4, 1999, objecting to the recommendation for remand because (1) exclusive federal question jurisdiction exists for actions such as this; and, alternatively, (2) concurrent federal question jurisdiction exists because any imperfections in obtaining consent of all parties to removal can be cured. Plaintiff filed a response to defendants' objections and the matter is now ripe for this court's disposition.

## II.

In their first objection, defendants assert that this case is subject to the exclusive federal question jurisdiction granted by ERISA, 29 U.S.C. § 1132(e).[5] To support that assertion, defendants argue that both DBS and National Union meet ERISA's definition of fiduciary, codified at 29 U.S.C. § 1002(21). Specifically, defendants contend that when National Union settled with DBS for $150,000, that money was a "plan asset" under National Union's control. ERISA defines a fiduciary, in part, as a person who "exercises any authority or control respecting management or disposition of [employee benefit plan] assets." 29 U.S.C. § 1002(21)(A)(i).

Before proceeding to directly analyze defendant's first objection, it is important to establish why defendants' argument even merits the court's attention when the "well-pleaded complaint rule" would ordinarily direct looking no further than National Union's complaint, which alleges only state law claims. *See Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir.1996) (citing, *inter alia, Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). However, when a state cause of action is completely preempted by federal law, the cause of action is necessarily federal in nature even if on its face it relies only on state law. *See Sweeney*, 89 F.3d at 1165. This exception to the well-pleaded complaint rule has been called the "complete preemption doctrine." *Id.*

Thus, whether this court has exclusive jurisdiction to hear National Union's

4. Maid Bess filed a timely joinder in notice of removal on September 16, 1998. Greenbrier, LaRocco and Crutchfield filed an untimely specific consent to removal on December 16, 1998.

5. Section 1132(e) provides that district courts have exclusive jurisdiction of actions brought by "the Secretary or by a participant, beneficiary, fiduciary," or others specifically named within the appropriate section of ERISA. However, state courts and district courts have concurrent jurisdiction of actions by partici-

pants or beneficiaries "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." This court doubts whether even the claims brought directly against DBS fall into the category of ERISA actions exclusively within the district court's jurisdiction. Certainly, if National Union is not a fiduciary, as discussed further below, exclusive jurisdiction does not lie in federal court.

claims depends on whether ERISA preempts the state law claims raised by National Union.[6] ERISA preemption, originally viewed by courts as very broad in scope, has more recently come to be viewed more narrowly. Shortly after the Supreme Court narrowed its interpretation of the scope of ERISA preemption in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers*, the Fourth Circuit had occasion to apply *Travelers*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *see Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1466–67 (4th Cir.1996). In *Coyne & Delany*, the Fourth Circuit emphasized that courts should not "assume lightly," even in the ERISA context, that Congress intended to preempt traditional fields of state law. *See id.* at 1467. ERISA only preempts state laws insofar as those laws "relate to any employee benefit plan." 29 U.S.C. § 1144(a). The words "relate to" should not be loosely interpreted: "some state actions may affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

■ In the way of more specific guidance in determining whether or not a state law claim is preempted by ERISA, the Fourth Circuit has echoed the Supreme Court's elucidation of three categories of state laws that typically "relate to" employee benefit plans: (1) laws that " 'mandate employee benefit structures or their administration' ": (2) laws that "bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself"; and (3) " 'laws providing alternative enforcement mechanisms' for employees to obtain

ERISA plan benefits." *Coyne & Delany*, 98 F.3d at 1468 (quoting and citing *Travelers* ). Excluded from these categories of laws preempted by ERISA are " 'traditional state-based laws of general applicability [that do not] implicate the relations among the traditional ERISA plan entities,' including the principals, the employer, the plan, the plan fiduciaries and the beneficiaries." *Id.* at 1469 (quoting *Sweeney* ).

By way of example, the following state law claims have been found not to be within the scope of ERISA preemption: malpractice claims against insurance professionals (acting as non-fiduciaries), *see Coyne & Delany*, 98 F.3d 1457; professional negligence and malpractice claims against a TPA and legal malpractice claims against a plan's attorneys, *see Sweeney*, 89 F.3d 1156; garnishment actions, claims for unpaid rent, failure to pay creditors, or torts committed by a plan, *see Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); contract law claims against a plan administrator and an insurer, *see Geweke Ford v. St. Joseph's Omni Preferred Care Inc.*, 130 F.3d 1355 (9th Cir. 1997).

■ Applying this guidance from the Supreme Court, the Fourth Circuit, as well as non-binding authority, this court finds that National Union's claims are not preempted by ERISA, even taking into consideration the potential issues, defenses, and counterclaims that defendants might raise in response to those claims. National Union has petitioned the Charlottesville Circuit Court to interpret the policy National Union issued to DBS; assess the validity of the release National Union obtained from DBS as part of its settlement of all claims under that policy; and determine whether defendants have

---

6. Ironically, were this court to hold that National Union's claims against the defendants are subject to this court's exclusive jurisdiction, it would be fatal rather than helpful to defendants' removal effort. If "preemption of state law is total and jurisdiction is exclusive

in the federal courts, the case cannot be removed, since the state court had no jurisdiction." 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3722 (2d ed.1985).

standing to make any claims based on that policy or release. While there is some relationship between these claims and the claims brought in federal court by these defendants against DBS, that relationship is too remote to invoke ERISA preemption.[7] Looking to the laws, rather than the facts, that will inform any court's determination of National Union's claims, those state laws bear only the most attenuated relationship to the employee benefit plan administered by DBS.

The law involved in this case is, as the Magistrate Judge succinctly put it, "garden variety" state law and does not relate closely enough to any employee benefit plan to mandate exclusive federal jurisdiction. Interpreting the policy and the release will in no way interfere with Congressional goals underlying ERISA of promoting uniformity in regulating employee benefit plans. *See Coyne & Delany*, 98 F.3d at 1468. The court's task will involve applying state contract and insurance law; perhaps implicating negligence law if defendants bring a counterclaim that National Union should have known when it released the $150,000 in settlement funds to DBS that DBS would not use those funds to pay off outstanding claims. These traditional areas of state law do not relate to any employee benefit plan, but only to an insurance policy obtained by an administrator of an employee benefit plan. Nor do these state laws, as they will apply to the facts of this case, fit into any of the three categories described by the Supreme Court in *Taylor* as having a connection with an ERISA plan: they do not mandate employee benefit structures; they do not bind employers or plan administrators to particular choices or regulate an ERISA plan; and they do not provide alternative enforcement mechanisms for employees to obtain ERISA benefits. *See id.*

■ The court must also reject defendants' reasoning that because National Union is an ERISA fiduciary, its claims in state court implicate relations among ERISA plan entities. This court questions whether even DBS qualifies as a fiduciary.[8] Certainly if DBS was not a fiduciary because its role consisted only of processing and paying benefit claims, National Union cannot be deemed a fiduciary merely because it insured DBS. Even assuming DBS was a fiduciary, an insurance company does not become a fiduciary with respect to an employee benefit plan simply by issuing a policy to an entity that is itself a fiduciary. *See, e.g., Kyle Railways, Inc. v. Pacific Admin. Serv.*, 990 F.2d 513, 517–18 (9th Cir.1993) (agreeing with "the majority of courts" that insurance companies are not ERISA fiduciaries unless they manage plan assets; citing decisions from the Courts of Appeals for the Fifth and Seventh Circuits as well as district courts in the Northern District of Alabama and the Eastern District of Tennessee).

■ Furthermore, defendant's argument that by paying $150,000 to DBS to settle any outstanding claims under the insurance policy, National Union exercised discretion or control over plan assets is utterly fallacious. The settlement funds were not a plan asset when National Union paid DBS; they were full payment on an insurance policy to which DBS and National Union were the only parties. Even if

---

7. Indeed, both the state cause of action brought by National Union and the federal action between these defendants and DBS will require resolution of some of the same disputed material facts, including the validity of the release and settlement between National Union and DBS.

8. One court in the Eastern District of Virginia has already determined that even DBS fails to meet the definition of a fiduciary, and that

determination was made in a case arising out of the same general set of facts underpinning other federal cases involving DBS. *See Greenbrier Architectural Woodwork Employee Welfare Benefit Plan v. Duke Benefit Servs.*, No. 3:96CV548 (E.D.Va. Feb. 21 1997). Although defendants correctly point out that the Eastern District's ruling is no *res judicata* for this court, that court's reasoning comports with ERISA law in the Fourth Circuit.

those funds should properly have been utilized by DBS to pay outstanding claims under the employee benefit plans administered by DBS, they did not become a plan asset until the funds were in DBS's possession and control. Nor did the policy provide any method by which National Union could ensure that the payments under the policy were transferred into any particular third party's hands. Accepting defendants' interpretation of the meaning of the term fiduciary under ERISA would transform into fiduciaries all parties who make payments to a TPA for any reason whatsoever. The court will not venture to extend the ERISA definition of fiduciary to that illogical extreme.

Therefore, the court will overrule defendants' first objection to the Magistrate Judge's Report. National Union's state law claims are not preempted by ERISA, therefore this court lacks exclusive jurisdiction and will remand the case to the Charlottesville Circuit Court.

### III.

Defendants make a second objection in the alternative: that this case is subject to the concurrent federal question jurisdiction provided by 29 U.S.C. § 1132(e) and that the case should be heard in federal court because all defendants have consented to removal. Defendants claim that the failure of some of the parties to notify the court directly of their consent to removal is not fatal to their notice of removal and can be cured by amendment.

Even if this court wished to accept defendants' invitation to exercise its discretion to hear claims within the jurisdiction of both the federal and state courts, it would not do so here. As discussed above, if ERISA makes any appearance in the claims brought by National Union, it lurks so far in the background that to hear this case in federal court would verge on a violation of principles of federalism. *See Sweeney,* 89 F.3d at 1168 (even if resolution of a claim would require some findings as to ERISA-related issues, that claim should not be viewed as arising under federal law within the meaning of 28 U.S.C. § 1331), *Mulcahey v. Columbia Organic Chemicals Co.,* 29 F.3d 148, 151 (4th Cir. 1994) (concern for federalism underlies the principle that removal statutes are to be strictly construed). Federal courts are courts of limited jurisdiction, which should not be imprudently extended to cover claims within the traditional purview of state courts. Even accepting as true, for the moment, defendants' interpretation of National Union's claims as including at least some counts which arise under federal law, that proposition is not ordinarily enough to bind this court to hear all the claims. A district court may, "in its discretion" remand a case involving some claims that are within federal jurisdiction and other claims that are otherwise non-removable. 28 U.S.C. § 1441(c).

This court is also troubled by defendants' failure to comply with the proper procedures for removal. To effectively remove a civil action brought in state court, defendants must file in the appropriate district court "a verified petition containing a short and plain statement of the facts which entitle them to removal" within thirty days after receipt by the defendants of service of the initial pleading. 28 U.S.C. § 1446. Most courts have interpreted section 1446 as requiring that *all* the defendants must be joined or consent to the removal petition. *See Aguiar v. Evans,* 607 F.Supp. 1418, 1419 (E.D.Va.1985) (citing decisions of the courts of appeals for the Seventh and Eighth Circuits); *see also* 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3731 (2d ed.1985; 1997 supplement) ("Ordinarily, the petition for removal must be signed by all of the defendants..."); *but see Perpetual Bldg. & Loan Ass'n v. Series Directors of Equitable Bldg. & Loan Ass'n,* 217 F.2d 1, 6 (4th Cir.1954) (overruling objection on appeal to removal by district court when not all defendants joined in removal petition, because, first, defendants joined in amended

removal petition allowed by the district court, and, second, there existed a separable controversy involving one of the defendants allowing that defendant to file removal petition individually).

■ The court will deny defendants' request that they be allowed to cure their failure to file a notice of removal joined by all defendants. In this court's view, that failure is more severe than defendants suggest, analogizing it to the technical, procedural defects in *Nutter* and *FHC Options. See Nutter v. New Rents, Inc.,* 945 F.2d 398, No. 90–2493, 1991 WL 193490 (4th Cir. Oct.1, 1991) (the defect for which the court allowed cure was merely failure to state that Kentucky was New Rents' principal place of business, essential to establishing diversity jurisdiction); *FHC Options, Inc. v. Sec. Life Ins. Co. of America,* 993 F.Supp. 378 (E.D.Va.1998) (defects that were amended were failure to state in the removal notice that it was within the thirty-day period and failure to correctly state grounds for diversity jurisdiction). The lack of joinder or consent by each and every defendant to the notice of removal represents a much more significant defect than those at issue in the cases cited by defendants. The Fourth Circuit has emphasized that removal statutes are to be strictly construed, and this lack of consent by all defendants presents a failing that cannot be easily excused under such strict construction. *See Mulcahey,* 29 F.3d at 151; *compare* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper at § 3732 (the thirty-day time limit in Section 1446 is "mandatory and must be strictly construed") *with* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper at § 3733 (more liberal rules apply in analyzing sufficiency of the statement of grounds for removal in a petition).

Although the court is not aware of any defendant objecting to removal of the action from Charlottesville Circuit Court, concerns about the defendants' failure to abide by the time limits and procedures for removal warrant remand. Many courts have advised that when federal jurisdiction is doubtful, the safest course is to remand. *See* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper at § 3739 (noting decisions by the courts of appeals for the First, Third, and Ninth Circuits, and numerous district courts). Therefore, even if concurrent jurisdiction exists, this court declines to exercise jurisdiction over the claims brought by National Union in state court and will remand the case to Charlottesville Circuit Court.

IV.

For the foregoing reasons, the court adopts the Report and Recommendation of the Magistrate Judge and grants plaintiff's motion to remand. The court overrules defendants' objection to the Magistrate Judge's finding that the claims involved here are purely state law claims that are not preempted by ERISA. The court also overrules defendants' objection to the Magistrate Judge's finding that there was a lack of complete consent to removal. An appropriate Order shall this day issue.