John R. YARNEVIC, Plaintiff–Appellant,

v.

BRINK'S, INCORPORATED, a Delaware corporation; Thomas R. Fussner, Defendants–Appellees.

No. 95–3144.

United States Court of Appeals, Fourth Circuit.

Argued July 17, 1996.

Decided Dec. 23, 1996.

ARGUED: David Duane Molgaard, Heavens & Molgaard, Charleston, WV, for Appellant. Jeffrey William Pagano, King, Pagano & Harrison, New York City, for Appellees. ON BRIEF: Christopher J. Heavens, Heavens & Molgaard, Charleston, WV, for Appellant.

Before MURNAGHAN, Circuit Judge, and BUTZNER and PHILLIPS, Senior Circuit Judges.

Affirmed by published opinion. Senior Judge BUTZNER wrote the opinion, in which Judge MURNAGHAN and Senior Judge PHILLIPS joined.

## OPINION

BUTZNER, Senior Circuit Judge:

John R. Yarnevic appeals the district court orders denying his motion to remand his action to state court and granting summary judgment in favor of Brink's, Incorporated. We affirm.

### I

The first issue is whether the district court properly denied Yarnevic's motion to remand the case to the state court.

Yarnevic filed suit against Brink's and Fussner in West Virginia circuit court on July 30, 1993. In his complaint, he alleged retaliatory discharge, defamation, and intentional infliction of emotional distress. On December 1, 1993, Brink's filed a Petition for Removal to the United States District Court for the Northern District of West Virginia based on diversity of citizenship and federal question jurisdiction. The diversity jurisdiction was grounded on the fact Yarnevic was a citizen of Ohio while Brink's was a Delaware corporation. Brink's claimed that although Fussner was also a citizen of Ohio, he was an agent of Brink's for purposes of this action and therefore his citizenship could not destroy diversity.

On December 21, 1993, Yarnevic filed a motion to remand the action to the state court. In his memorandum in support of his motion to remand, Yarnevic noted that he had moved from Ohio to Pennsylvania on October 8, 1993. His move occurred after his complaint was filed but before it was served on Brink's. The district court denied Yarnevic's motion to remand and subsequently denied his motion for reconsideration and remand. It based its decision on the diversity jurisdiction created by Yarnevic's change of domicile.

### II

A defendant may remove any action from a state court to a federal court if the action could have originally been brought in federal court. 28 U.S.C. § 1441 (1994). A proper filing of a notice of removal immediately strips the state court of its jurisdiction. 28 U.S.C. § 1446(d), *State of South Carolina v. Moore,* 447 F.2d 1067, 1073 (4th Cir.1971). The federal court may remand the action to the state court if the federal court finds that it has no subject matter jurisdiction. 28 U.S.C. § 1447(c). Whether the court has jurisdiction is a legal question which we review *de novo. Mulcahey v. Columbia Organic Chemicals Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994).

Yarnevic asserts that removal of this action was both improper and untimely. His main contentions are that (1) the district court should have determined diversity jurisdiction at the time the state court complaint was filed, and (2) that 28 U.S.C. § 1446(b) required Brink's to file an additional or supplemental notice of removal upon learning of Yarnevic's change of domicile.

Diversity may be created after the filing of a complaint through voluntary acts of the plaintiff. *Powers v. Chesapeake & Ohio Ry.,* 169 U.S. 92, 101, 18 S.Ct. 264, 267, 42 L.Ed. 673 (1898); *Higgins v. E.I. DuPont de Nemours & Co.,* 863 F.2d 1162, 1166 (4th Cir. 1988); *DeBry v. Transamerica Corp.,* 601 F.2d 480, 486–87 (10th Cir.1979). The ratio-

nale for this rule is that although a defendant should not be allowed to change his domicile after the complaint is filed for the sole purpose of effectuating removal, there is no reason to protect the plaintiff against the adverse consequences of his own voluntary acts. *See DeBry*, 601 F.2d at 486–87; *see also*, 14A Wright, Miller, & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3732 at 519–23 (1985).

■ Yarnevic next contends that removal was not in accordance with 28 U.S.C. § 1446(b):

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable. . . .

Yarnevic argues that his memorandum was not a "motion, order, or other paper from which it may be ascertained that a case has become removable" because it was not part of the state court record. In the alternative, Yarnevic argues that § 1446(b) requires Brink's to file an additional or supplemental notice of removal upon receipt of this information.

Yarnevic's memorandum could be classified as either part of a "motion" or, at the very least, "other paper" supporting the motion. We do not think § 1446(b) requires that the "motion, order or other paper" be part of the state court record, especially in a case like this where diversity is created by a voluntary act of the plaintiff and the case has already been properly removed. The "motion, order or other paper" requirement is broad enough to include any information received by the defendant, "whether communicated in a formal or informal manner." *Broderick v. Dellasandro*, 859 F.Supp. 176, 178 (E.D.Pa.1994) (quoting 14A Wright, Miller, and Cooper, *Federal Practice and Procedure*, § 3732 at 520).

■ The more vexing question is whether § 1446(b) requires Brink's to file an additional or supplemental notice of removal. Due to the unique posture of this case, we do not think it does. When Brink's first learned of Yarnevic's change of domicile noted in his memorandum, it would ordinarily have had to file a notice of removal within 30 days. 28 U.S.C. § 1446(b). In this case, however, Brink's had already properly removed the action to federal court on the basis of diversity of citizenship. The change of domicile information simply added new evidence to rebut Yarnevic's motion to remand.

One of the few federal courts to address this issue reasoned that "a supplemental notice of removal, would, if granted, have the effect of removing a case that has already been removed." *Nolan v. Boeing Co.*, 715 F.Supp. 152, 153 n. 1 (E.D.La.1989). Similar language in earlier cases reinforces this view. The Supreme Court has noted that when reviewing a removal petition for diversity jurisdiction "it is proper to treat the removal petition as if it has been amended to include the relevant information in the later-filed affidavits." *Willingham v. Morgan*, 395 U.S. 402, 407 n. 3, 89 S.Ct. 1813, 1816 n. 3, 23 L.Ed.2d 396 (1969); *see also*, *Buell v. Sears, Roebuck & Co.*, 321 F.2d 468, 471 (10th Cir. 1963) ("if there were some suggestion in the record supporting diversity jurisdiction, we might deem the petition for removal amended to comport with the proof."). While it would have been prudent for Brink's to file a supplemental petition specifying the new basis for diversity within 30 days after Yarnevic disclosed that his move from West Virginia created diversity, we conclude that it was not required. The district court properly denied Yarnevic's motion to remand the case to the state court.

### III

The second issue is whether the district court properly granted Brink's motion for summary judgment on Yarnevic's retaliatory discharge claim.

Yarnevic was employed by Brink's from July 1981 until July 1992 at its Wheeling, West Virginia, branch. Brink's is a Delaware corporation whose business consists of transporting and securing currency, negotiable instruments, and other valuables for its customers. In Yarnevic's 11 years with Brink's, he was employed as a driver, mes-

senger, and cashier before being promoted to assistant manager of the Wheeling branch in 1990. Yarnevic's duties as assistant manager included monitoring and balancing the financial records of property, including money, stored in the vault. Throughout this time he was an at-will employee.

In 1990, Frank Pollock, the Wheeling branch manager and Yarnevic's supervisor, launched an extensive embezzlement scheme in which he stole almost $500,000 from a trust account belonging to Bank One of Steubenville. Yarnevic suspected Pollock was engaged in financial misconduct as early as February 1990 when Pollock began to exhibit "erratic behavior and a bizarre, flamboyant lifestyle."

When Brink's was subsequently alerted to the embezzlement scheme by unidentified employees in October 1991, it immediately sent an official to conduct an audit of the Wheeling branch. The "surprise" audit, which was conducted on October 23 and 24, 1991, uncovered no evidence of embezzlement, and Yarnevic did not inform the auditor of his suspicions. On October 25, 1991, Yarnevic conducted his own private audit which revealed $262,000 missing from the Bank One trust account. He also captured Pollock on video switching the currency straps of different funds in order to facilitate his scheme. Nevertheless, Yarnevic continued to monitor and verify the vault balance sheets which he knew reflected false information.

Shortly thereafter, auditors from Bank One began to conduct monthly audits of the branch, as did Brink's parent company, the Pittston Company. Again, Yarnevic did not disclose the embezzlement to these auditors.

In April 1992, Yarnevic reported Pollock's embezzlement to the Federal Bureau of Investigation. On April 23, the FBI arrested Pollock. Only then did Yarnevic report the embezzlement to Brink's. The company's regional general manager, Thomas R. Fussner, immediately came to the Wheeling branch to speak with Yarnevic and the rest of the employees about the embezzlement. In a private meeting with Fussner, Yarnevic, in the presence of his lawyer, admitted that he knew Pollock had been embezzling funds since November of 1990. Fussner then initiated a three-month internal investigation into the embezzlement which ultimately uncovered information leading to Yarnevic's termination from Brink's.

Brink's own investigation revealed that Yarnevic had failed to follow company reporting and accounting procedures. Specifically, Brink's found that Yarnevic had withheld evidence of the embezzlement for at least five months and that he had knowingly verified false balance sheets during that time. On July 31, 1992, Fussner hand delivered a termination letter to Yarnevic which read:

A review has been conducted concerning certain management operational practices engaged in at the Wheeling, West Virginia branch. It has been concluded that your unwillingness to follow the fundamental rules of Brink's Inc., particularly regarding reporting and accounting, as well as displaying through your conduct, the absence of good judgment concerning the safe keeping of valuables of our customers has led us to determine that your employment be terminated effective Friday, July 31, 1992.

Due to the activities transpiring at the Wheeling, West Virginia branch engaged in while you were assistant manager, Brink's has lost confidence in your ability to ensure the safety and security of the property of Brink's and its customers.

### IV

We review summary judgment orders *de novo*. *Tritle v. Crown Airways, Inc.*, 928 F.2d 81, 83 (4th Cir.1990). The moving party must show that there is no material fact in issue, and we view the evidence in the light most favorable to the nonmoving party. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979). However, summary judgment is proper against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Since this case involves retaliatory discharge, Brink's underlying motivation and

state of mind are important. Although it is often more difficult for the moving party to prevail on a summary judgment motion where state of mind is at issue, *Charbonnages,* 597 F.2d at 414, it is certainly not impossible. In *Goldberg v. B. Green & Co.,* 836 F.2d 845, 847 (4th Cir.1988), this court upheld summary judgment where the plaintiff failed to produce any evidence that the defendant had used age discrimination as a motivation for terminating the plaintiff's employment. The court noted that although motivation was at issue, the plaintiff's "naked opinion, without more, is not enough to establish a prima facie case of age discrimination." *Id.* at 848.

■ The law of retaliatory discharge in West Virginia was first recognized by the Supreme Court of Appeals in 1978 in *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978). In *Harless,* the court declared that an employer may not terminate an at-will employee "where the employer's motivation for the discharge contravenes some substantial public policy principle." *Harless,* 162 W.Va. at 124, 246 S.E.2d at 275. Once a retaliatory discharge claim is made, however, an employer may rebut the claim by showing a "legitimate, nonpretextual and nonretaliatory reason for its action." *Birthisel v. Tri–Cities Health Services,* 188 W.Va. 371, 377, 424 S.E.2d 606, 612 (W.Va.1992).

■ Yarnevic argues that his decision to report the embezzlement scheme to the FBI was a substantial public policy principle and that the discharge was therefore improper under *Harless.* A retaliatory discharge claim, however, fails if an employer proves that an employee would have been terminated even if he had not engaged in the protected conduct. *Bowe v. Charleston Area Medical Center,* 189 W.Va. 145, 150, 428 S.E.2d 773, 778 (1993). Since the district court properly found that Brink's has established legitimate, nonpretextual reasons for Yarnevic's discharge, we conclude that *Harless* does not control the outcome of this case.

In its motion for summary judgment, Brink's offered the district court plausible evidence that Yarnevic's discharge was nonpretextual. Brink's termination letter to Yarnevic on July 31, 1992, cited a "loss of confidence" in Yarnevic's ability to provide for the safety and security of Brink's property and its customers. This "loss of confidence" was based largely on Yarnevic's failure to follow company procedures with respect to reporting and accounting. Brink's employment handbook clearly states that in the event of a loss, employees were to "notify management immediately before taking any other action." Employees were required to "fully disclose all information they have concerning the loss," and failure to do so "may result in disciplinary action up to and including discharge." *Id.* Furthermore, the handbook warns that an employee shall be dismissed for "forging or falsifying any company record." Adherence to these particular rules seems especially important to a company such as Brink's whose sole business is in securing the valuable property of its customers.

It is undisputed that Yarnevic waited at least five months before he reported Pollock's embezzlement to the FBI. Even after his private audit confirmed that Pollock had embezzled $262,000, Yarnevic continued to falsify vault balance sheets and failed to report additional losses to Brink's or to any of the auditors. It is reasonable to conclude that Yarnevic's flagrant violations of the company's reporting and accounting rules would cause Brink's to lose confidence in his ability to hold a position of trust in the company.

■ We agree with the district court's conclusion that Brink's has sufficiently provided nonpretextual justifications for Yarnevic's discharge. We also find that Yarnevic has not shown any evidence to the contrary. Yarnevic's allegations that Brink's management considered him "dirty" or "guilty by association" are remote inferences that do not contradict any of the nonpretextual grounds for his termination. Also unavailing is his argument that "it can be argued from all the facts that Brink's had a motive for destroying the plaintiff's career and thereby sent a message to others who might be so inclined to act as he did." Mere conclusory allegations of motivation do not preclude

summary judgment. *Goldberg,* 836 F.2d at 848. A party opposing the motion must set forth specific facts and may not rely on mere allegations contained in the pleadings. Fed. R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

Because there is no material fact in dispute, we affirm the judgment of the district court.

*AFFIRMED.*