UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHERYL W. BARTEE,
<u>Plaintiff-Appellant,</u>

v.

T. NEAL MORRIS, Individually; B. C.

ELLIOTT, Individually; T. A. SMITH,
Individually; A. RAY GRIFFIN, JR.,
Individually,
<u>Defendants-Appellees.</u>

No. 97-1944

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-96-32)

Argued: January 27, 1998

Decided: May 14, 1998

Before ERVIN and MICHAEL, Circuit Judges, and
BRITT, Senior United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by unpublished opinion. Senior Judge Britt wrote the opin-
ion in which Judge Ervin and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Sa'ad El-Amin, EL-AMIN & CRAWFORD, Richmond,
Virginia, for Appellant. Yvonne Steenstra Wellford, MALONEY,

HUENNEKENS, PARKS, GECKER & PARSONS, P.C., Richmond, Virginia, for Appellees. **ON BRIEF:** Beverly D. Crawford, EL-AMIN & CRAWFORD, Richmond, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

BRITT, Senior District Judge:

This matter is before the court on appeal of the district court's grant of summary judgment for Defendants-Appellees. We review the grant of summary judgment de novo. Jackson v. Kimel, 992 F.2d 1318, 1322 (4th Cir. 1993). Summary judgment is appropriate when there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Unsupported speculation is not enough to withstand a motion for summary judgment. Ash v. United Parcel Service, Inc., 800 F.2d 409, 411-12 (4th Cir. 1986).

I. BACKGROUND

Plaintiff-Appellant Cheryl Bartee (Bartee) is a former detective with the City of Danville Virginia Police Department (Department) who was allegedly terminated from her position for violating a Department rule. Chief of Police T. Neal Morris (Morris) hired Bartee in 1989 and issued her commendations in 1990 and 1992. He nominated her for the Jaycees' Police Officer of the Year Award in 1993, placed her in charge of the Department's mounted detail in 1994 and promoted her to detective in 1994.

Bartee filed this suit on 17 June 1996 alleging violations of her equal protection rights based on gender and her substantive due pro-

2

cess rights. Specifically, Bartee claims that her termination was a disciplinary action that was more severe than that imposed upon "similarly situated" male officers, and that this alleged disparate treatment denied and deprived her of her "rights, privileges or immunities secured by federal law. . . ." (Amended Compl.¶¶ 63,67.) She later stipulated to the dismissal of the substantive due process claim and only the equal protection claim was before the district court.

Defendants-appellees are employees of the Department and the City of Danville. Although the suit names four defendants, Bartee alleged no facts and offered no evidence to demonstrate that police officers B.C. Elliott or T.A. Smith were involved in her termination. Therefore, the grant of summary judgement in favor of those defendants-appellees will be affirmed without further discussion.

On 1 August 1995, Morris recommended to Danville City Manager A. Ray Griffin (Griffin) that Bartee be terminated for violating a Department rule of conduct prohibiting the unauthorized tape recording of another person without that person's knowledge. At the time of the recommendation, Bartee was the only officer to have ever violated this rule of conduct. Bartee testified at her deposition that she knew that she was violating this rule at the time she tape recorded a conversation between herself and her supervisor, T.A. Smith (Smith). The rule Bartee violated reads:

> Tape recording the conversation of another person without informing the other party shall be a prohibited practice unless it is in conjunction with an investigation sanctioned by the Chief of Police or the Commonwealth's Attorney. This applies to all persons employed by the Police Department and covers one-on-one conversations and telephone conversations. Violations of this rule shall be subject to severe disciplinary action including dismissal.

Of the forty-six Department rules of conduct, only this rule and one other expressly provide that violations will result in "severe disciplinary action including dismissal." This particular rule had been in effect since 1985, four years before the Department hired Bartee.

Bartee argues that while it is true that the Rule she violated was one of only two which specifically provided for dismissal, Morris tes-

3

tified that there were several Department rules which he considered so serious that conduct constituting a violation of them would warrant termination and that the absence of specific language referencing termination does not imply that a violation would not result in termination. These other rules included those concerning unbecoming conduct, immoral conduct, insubordination, abuse of position, and conduct toward public and Department members and employees.

In an attempt to support her claim of disparate treatment, Bartee points to two male officers who engaged in insubordinate conduct but were not terminated. She also proffered evidence that male officers who were untruthful in investigations and who used excessive force were not terminated for their conduct. Morris testified at deposition that these actions created an unfavorable public opinion of the Department, but that he believed them to be less serious than Bartee's recording of her conversation with Smith.

Bartee also offered evidence of a male officer who received a lenient disciplinary action for immoral conduct. Morris testified that this conduct reflected badly upon the Department, but did not state whether he considered this conduct more or less severe than that of Bartee.

Finally, Bartee offered evidence of male officers whom she alleged received more lenient disciplinary actions despite their repeated and successive violations of Department policy. One officer was involved in four incidents before being terminated for his failure to respond to attempts to correct his performance. Another officer was repeatedly late to work and Department training, found to have acted unprofessionally to a citizen and found to have made an arrest without probable cause before he was recommended for termination. Finally, Morris testified that one officer was late for duty or failed to report for duty repeatedly over many months and ultimately was charged with violating a Department rule by releasing sensitive Department information. Morris testified that there can be instances where the cumulative conduct of an officer can justify termination.

It is undisputed that none of the violations for which male officers were disciplined and upon which Bartee relies to show disparate treatment based on gender, involved the rule Bartee admittedly violated.

4

## II. DISCUSSION

For the reasons stated below, we affirm the district court's grant of summary judgment for defendants-appellees.

Bartee's equal protection claim, that she was terminated in lieu of a less severe punishment because she is female, must be established through the same proof scheme used to prove claims asserted under Title VII. Abasiekong v. City of Shelby, 744 F.2d 1055, 1058 (4th Cir. 1984). This scheme requires plaintiff to meet her burden of intentional gender discrimination under the shifting proof method articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and modified by this court to fit the disciplinary context in Moore v. City of Charlotte, 754 F.2d 1100 (4th Cir.), cert. denied, 472 U.S. 1021 (1985). As Moore states, "[t]he most important variables in the disciplinary context, and the most likely sources of different but non-discriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed." Id. at 1105.

Bartee has offered no direct evidence of gender discrimination, so she must show that she "engaged in prohibited conduct similar to that of a person of another . . . sex . . . and that disciplinary measures enforced against [her] were more severe than those enforced against the other person." Moore, 754 F.2d at 1105-1106.

Bartee violated a Department rule that no one else had ever violated. Further, she did not present evidence that a male employee had violated the only other Department rule specifically warning of termination as a sanction. Bartee alludes to the disciplinary treatment of male officers who violated other rules, yet each of these other rules provides that a violation may subject a member of the Danville Police Department to disciplinary action but says nothing about termination.

Morris testified at his deposition, which was filed by defendants-appellees in support of their motion for summary judgment, that the disciplinary action imposed for a violation of each of these rules would depend on the circumstances. Morris further testified that there would be no penalty short of termination for any officer violating the rule prohibiting recording of conversations.

5

Bartee has failed to produce evidence that she and any male counterpart engaged in similar prohibited conduct or that any male officer committed an offense of "comparable seriousness." As this court has stated, to determine "comparable seriousness" it is appropriate to give "at least initial deference to the system of offenses created by the [employer]." Moore, 754 F.2d at 1108. The fact that some male officers were not discharged for violating other rules which provided for varying disciplinary action, has no relevance to Bartee's prima facie case of gender-based disparate treatment. She has simply failed to produce facts to show that defendants-appellees engaged in "disparity of treatment from which one could conclude that[Bartee's] discipline was a product of discrimination." Cook v. CSX Transp. Corp., 988 F.2d 507, 512 (4th Cir. 1993).

Even assuming that Bartee established a prima facie case, she produced no evidence to rebut or prove that defendants-appellees' offered reasons for termination were anything other than legitimate and nondiscriminatory. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993). All evidence presented establishes that Bartee knowingly violated the rule against recording conversations. Morris and Griffin testified that her admitted violation of this rule was the reason for her termination. Bartee did not offer any evidence to refute these statements. In her deposition she stated that she simply believed that if she had not been female, that she would not have been terminated. She cannot overcome defendants-appellees' articulated legitimate reason for termination with a statement that she simply believes that she was fired because she is female. Without facts to support this belief and to support a connection between her gender and her termination, her claim cannot and should not survive summary judgment. Autry v. North Carolina Dep't of Human Resources, 820 F.2d 1384, 1386 (4th Cir. 1987). Her personal opinion is simply not enough. Yarnevic v. Brink's Inc., 102 F.3d 753, 757 (4th Cir. 1996); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

The fact that Bartee received many accolades from Morris during her six years as a Danville Police Officer, including nomination for Police Officer of the Year, two commendations and a promotion, make it unlikely that Morris recommended termination based upon her gender. Amirmokri v. Baltimore Gas & Electric Co., 60 F.3d 1126 (4th Cir. 1995); Tyndall v. National Educ. Ctrs. , 31 F.3d 209 (4th Cir.

6

1994). These actions create "a strong inference[that] discrimination was not a determining factor" in Bartee's termination. <u>Proud v. Stone</u>, 945 F.2d 796 (4th Cir. 1991). Bartee has not refuted this inference.

III. <u>CONCLUSION</u>

Bartee failed to create a genuine issue of material fact as to the ultimate question of whether the defendants-appellees treated her differently than a similarly situated male officer. Assuming that she could have established a <u>prima facie</u> case of gender discrimination, she has failed to carry her burden in light of the legitimate nondiscriminatory reason for termination: her admitted violation of the Department rule against recording conversations. Accordingly, we affirm the district court's grant of summary judgment.

<u>AFFIRMED</u>