**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1868**

KATHLEEN R. WOOD, Personal Representative for the Estate of
James E. Joyner,

Plaintiff – Appellee,

v.

CRANE CO., individually and as successor to National-U.S.
Radiator, is a Delaware Corporation with its principal
place of business in Connecticut,

Defendant – Appellant,

and

A.C. & R INSULATION CO., INC.; ALLEN-BRADLEY COMPANY, INC.;
ALLIS-CHALMERS ENERGY, INC.; AIR & LIQUID SYSTEMS
CORPORATION, Successor by Merger to Buffalo Pumps, Inc.;
A.O. SMITH CORPORATION; ARMSTRONG INTERNATIONAL, INC.;
AQUA-CHEM, INC., d/b/a Clever-Brooks Division; AURORA PUMP,
CO; A.W. CHESTERTON, INC.; BW/IP, INC., and its wholly
owned subsidiaries as successor-in-interest to BW/IP;
CARRIER CORP.; CBS CORPORATION, f/k/a Viacom, Inc., as
successor to Westinghouse Electric Corp.; CERTAINEED
CORPORATION; CLEAVER-BROOKS COMPANY; COLUMBIA BOILER
COMPANY; CROWN CORK & SEAL COMPANY, INC.; EATON ELECTRICAL,
INC., f/k/a Cutler Hammer, Inc.; ELLIOTT COMPANY I, f/k/a
Elliott Turbomachinery Co. Inc.; FMC CORPORATION,
individually, on behalf of its Former Construction
Equipment Group & Former Peerless Pump Division;
FOSTER-WHEELER LLC; FOSTER WHEELER ENERGY CORPORATION,
f/k/a Foster Wheeler Corporation; GARDNER DENVER, INC.;
GARDNER DENVER NASH, LLC, a/k/a Gardner Denver, Inc., f/k/a
Nash Elmo Industries, LLC; GENERAL ELECTRIC COMPANY;
GEORGIA-PACIFIC, LLC; THE GOODYEAR TIRE & RUBBER COMPANY,
individually and as successor-in-interest to Durabla
Manufacturing; GOULDS PUMPS, INC., a subsidiary of ITT
Industries, Inc.; THE GRISCOM-RUSSELL COMPANY, f/k/a The

Dial Corporation, a Delaware Corporation; H.B. FULLER COMPANY, Successor/or parent of Benjamin Foster Division of Amchem Products, Inc.; H.B. SMITH COMPANY, INC., a/k/a Smith Cast Iron Boilers; HONEYWELL INTERNATIONAL, INC.; HOPEMAN BROTHERS, INC.; IMO INDUSTRIES, INCORPORATED, individually and on behalf of and successor to DeLaval; DeLaval Stream Turbine Co., IMO DeLaval and Warren Pump Co.; INGERSOLL-RAND COMPANY; INTERNATIONAL PAPER COMPANY, INC.; JOHN CRANE, INC.; KAISER GYPSUM COMPANY, INC.; MCNALLY INDUSTRIES, INC., individually and as successor-in-interest to Northern Pump Company and Northern Fire Apparatus Company; MCIC, INC., f/k/a McCormick Asbestos Co.; METROPOLITAN LIFE INSURANCE CO.; NATIONAL SERVICE INDUSTRIES, INC., f/k/a North Brothers, Inc.; OWENS-ILLINOIS, INC.; RAPID-AMERICAN CORPORATION; RILEY POWER, INC., f/k/a Babcock Borsig, Inc., f/k/a Riley Stoker Corporation; SB DECKING, INC., f/k/a Selby, Battersby & Company; SEALING EQUIPMENT PRODUCTS CO. INC.; SIEMANS DEMAG DELAVAL TURBOMACHINERY, INC., f/k/a Demag Delaval Turbomachinery, Inc.; SCHNEIDER ELECTRIC USA, INC., f/k/a Square D Company; UNION CARBIDE CORPORATION; UNIROYAL, INCORPORATED; VALEN VALVE CORPORATION; WALLACE & GALE ASBESTOS SETTLEMENT TRUST; THE WALTER E. CAMPBELL COMPANY, INC.; WARREN PUMPS, LLC, f/k/a Warren Pumps, Incorporated; WEIL PUMP COMPANY INC.; WEIL-MCLAIN, INC.; YARWAY CORPORATION; ROCKWELL AUTOMATION, INC., successor-in-interest to Allen-Bradley Co.,

Defendants.

———————

Appeal from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, District Judge. (1:12-cv-02294-CCB)

———————

Argued: March 19, 2014                    Decided: August 15, 2014

———————

Before DUNCAN, WYNN, and DIAZ, Circuit Judges.

———————

Affirmed by published opinion. Judge Diaz wrote the opinion, in which Judge Wynn joined. Judge Duncan concurred in the judgment only.

———————

2

**ARGUED:** Michael James Ross, K&L GATES LLP, Pittsburgh, Pennsylvania, for Appellant. Jacqueline Gagne Badders, RUCKDESCHEL LAW FIRM, LLC, Ellicott City, Maryland, for Appellee. **ON BRIEF:** Nicholas P. Vari, Syed D. Ali, K&L GATES LLP, Pittsburgh, Pennsylvania; Neil J. MacDonald, MACDONALD LAW GROUP, LLC, Beltsville, Maryland, for Appellant. Jonathan Ruckdeschel, Z. Stephen Horvat, RUCKDESCHEL LAW FIRM, LLC, Ellicott City, Maryland, for Appellee.

---

DIAZ, Circuit Judge:

Crane Company, one of many defendants in this asbestos litigation, removed this case to federal court, asserting a federal defense to plaintiff James Joyner's[1] state tort claims. When Joyner amended his complaint, eliminating the claims underlying that federal defense, the district court remanded to state court. Crane now complains that it should have been given the opportunity to assert a new basis for federal jurisdiction-- even though it had declined to do so in a timely fashion. We affirm the district court's decision to remand.

I.

A.

James Joyner was diagnosed with mesothelioma in March 2012. His illness allegedly resulted from exposure to asbestos while working as an electrician for the Coast Guard and then in the private sector.

Joyner filed suit in Maryland state court, alleging (1) strict liability for defective design and failure to warn; (2) breach of implied warranty; (3) negligence products liability claims; and (4) aiding and abetting and conspiracy to conceal

---

[1] Joyner passed away during the course of these proceedings, and his representative, Kathleen Wood, has been substituted in the caption. We continue to refer to Joyner in our opinion.

information about the dangers of asbestos. Joyner named as defendants a number of manufacturers who allegedly supplied asbestos-containing materials with which he came into contact at various points in his career. One of those defendants, Crane Co., allegedly manufactured and supplied asbestos-containing valves and gaskets to the Navy,[2] on whose ships Joyner worked while employed by the Coast Guard.

Crane removed the case to federal court under the federal officer removal statute. See 28 U.S.C. § 1442(a)(1). That provision allows for removal of suits against "[t]he United States or . . . any officer . . . in an official or individual capacity, for or relating to any act under color of such office." Id. In support of its position, Crane averred that it would assert the federal contractor defense, as it had supplied the valves in conformance with military specifications. See J.A. 42. Crane's notice of removal did mention that the valves included gaskets as internal component parts, but Crane did not explicitly assert the defense as related to gaskets. See J.A. 42.

---

[2] Joyner's complaint did not identify the valves and gaskets as the source of his injuries; this information became available during the course of depositions, after which Crane filed its notice of removal.

Joyner moved to remand to state court, arguing that Crane's evidence was insufficient to support its jurisdictional allegations. In the alternative, Joyner moved to sever the valve claims against Crane and to remand the claims against the other defendants--as well as Joyner's gasket claims against Crane--to state court. At oral argument before the district court, Crane explicitly refused to take a position as to whether the federal contractor defense applied to <u>any</u> gaskets Crane might have supplied. Rather, Crane apparently sought to preserve its contention that the gaskets simply weren't theirs. <u>See</u> J.A. 2646 ("Crane has a different position with regard to their gasket because it was never, never on the Navy's QPL [qualified products list] and should never have been used."); <u>see also</u> J.A. 2732[3] ("To be clear, it is Crane Co.'s position that Mr. Joyner did not work with replacement Cranite gaskets on Navy vessels because Cranite gaskets were not on any government QPL list, and thus were not able to be ordered for use on Navy vessels through the procurement process."). Crane declined, however, to make an argument in the alternative--that the gaskets "would have been supplied pursuant to detailed

---

[3] This citation is to Crane's opposition to Joyner's notice of abandonment and request for remand, filed on April 11, 2013 in the district court.

6

government specifications"--until much later in the litigation. J.A. 2732.

In a memorandum opinion and order issued March 7, 2013, the district court found that Crane had sufficiently supported removal pursuant to § 1442(a)(1), focusing on the valve claims. See Joyner v. A.C. & R. Insulation Co., No. CCB-12-2294, 2013 WL 877125 (D. Md. Mar. 7, 2013). It did, however, grant in part Joyner's motion to sever the valve claims from all the others. The court noted that it could exercise supplemental jurisdiction over the other claims, but largely declined to do so. The court found that state law claims predominated over the claims implicating the federal defense and that Maryland had a strong interest in adjudicating its own state law claims, leading the court to sever the claims against the other defendants. But the court also noted its interest in economy, which weighed against forcing Crane to litigate claims regarding valves in one court and gaskets in another. Thus, the court remanded the claims against the other defendants back to Maryland state court, but retained both claims against Crane.

Shortly thereafter, Joyner filed a "notice of abandonment of claims regarding Crane Co. valves only and request for remand." J.A. 2722. The notice explained that Joyner was abandoning his claims against Crane with respect to its valves, retaining only his claims involving injuries caused by Crane's

7

gaskets.  See J.A. 2722–23, 2923.  Joyner argued that because Crane's removal to federal court relied on the government contractor defense as to the valves alone, the district court had no subject matter jurisdiction without those claims.

Crane vociferously contested Joyner's motion, arguing that Joyner was manipulating his complaint to avoid federal jurisdiction and that Federal Rule of Civil Procedure 15 does not permit Joyner to amend his complaint with such precision. Crane also argued that it could assert its federal defense in relation to the gaskets.

The district court addressed these concerns in a memorandum opinion and order on June 6, 2013.  See Joyner v. A.C. & R. Insulation Co., No. CCB-12-2294, 2013 WL 2460537 (D. Md. June 6, 2013).  The court chose to construe Joyner's notice of abandonment as a motion to amend his complaint under Rule 15(a). Finding that such an amendment would not prejudice Crane, the district court granted leave to amend.  The court found that Crane had not asserted a federal defense with respect to gaskets and that 28 U.S.C. § 1446(b) prevented Crane from asserting it now, well beyond the thirty days that provision grants for notice of removal.  The court also explained that any cross-claims for contribution would be irrelevant, as Joyner had forfeited any damages related to the valves.  Thus, the defense would not apply as to potential cross-claims from co-defendants.

8

Accordingly, the court remanded Joyner's remaining claims to Maryland state court.

## B.

Crane appeals both the March 7 and June 6 orders, contending that all claims should have remained in federal court. The case is calendared for trial in the Circuit Court for Baltimore City, and we think it belongs there. Because the district court did not err in remanding the Crane gasket claims to state court, we need not evaluate the propriety of the court's earlier decision to remand the claims against the other defendants, or whether we even have jurisdiction to consider that question.

## II.

As an initial matter, Joyner asserts that we have no jurisdiction to review this appeal. We disagree.

Crane correctly observes that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise." 28 U.S.C. § 1447(d). This case was originally removed pursuant to § 1442(a)(1) and is thus reviewable.

9

Joyner argues that because he amended his complaint to disclaim any cause of action regarding the valves, the part of the case that was removed pursuant to § 1442 simply no longer exists. As Joyner sees it, because the issues now before us were in the district court pursuant to its supplemental jurisdiction, they do not fall within the narrow exceptions of § 1447(d).

But Joyner ignores a basic proposition: that parties remove cases, not claims. Section 1447(d) explicitly refers to a "case" removed from state court. Because this case was originally removed pursuant to the federal officer removal statute, we have jurisdiction now.

### III.

The district court remanded this case pursuant to 28 U.S.C. § 1447(c).[4] See J.A. 3007. That statute provides that "[i]f at

---

[4] To be clear, we recognize that the district court could certainly have chosen to exercise supplemental jurisdiction even after the valve claims were gone. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988) ("[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate. The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine."). Our reading of the March 7 and June 6 orders together suggests to us that the district court declined to do so. See Mangold v. Analytic (Continued)

10

any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Id. Crane contends that the district court never "lack[ed] subject matter jurisdiction," asserting that Joyner's disclaimer as to the valves was wholly ineffectual. And in the alternative, Crane argues, it should be able to assert new grounds for subject matter jurisdiction in response to Joyner's disclaimer. We address each argument in turn, and in so doing, interpret the relevant statutes de novo. See Holland v. Pardee Coal Co., 269 F.3d 424, 430 (4th Cir. 2001).

A.

Crane first asserts that Joyner's disclaimer is a legal nullity, devoid of real effect. Crane does not dispute that "a federal district court has discretion under the doctrine of pendent jurisdiction to remand a properly removed case to state court when all federal-law claims in the action have been eliminated and only pendent state-law claims remain." Carnegie-

_____

Servs., Inc., 77 F.3d 1442, 1450 (4th Cir. 1996) (noting our "power--and responsibility--to look past contextually ambiguous allusions and even specific citations to § 1447(c) to determine by independent review of the record the actual grounds or basis upon which the district court considered it was empowered to remand" (emphasis omitted)). We simply understand the district court to say that it no longer had an independent basis for subject matter jurisdiction besides the supplemental jurisdiction it declined to exercise.

11

Mellon Univ. v. Cohill, 484 U.S. 343, 345 (1988); see also Appellant's Br. at 16. But because the federal question arose from the defense to the dismissed claims, rather than the claims themselves, Crane thinks different rules apply.

In support of this assertion, Crane cites to one unreported district court case from outside our circuit. That court held that "[b]ecause removals pursuant to the federal officer removal statute are premised on the existence of a federal defense, rather than a plaintiff's artfully constructed complaint, neither Plaintiff's disclaimer nor [his] characterizations of [his] claims are determinative." Brantley v. Borg-Warner Morse Tec, Inc., No. 3:12cv540 AJB (JMA), 2012 WL 1571129, at *2 (S.D. Cal. May 3, 2012) (internal quotation marks and citations omitted).

Even if we were inclined to rest our decision on such authority, the case is distinguishable. "[D]espite [his] disclaimer" of any claims related to the "direction of an officer of the United States Government," Brantley "still s[ought] damages arising out of his exposure to asbestos in and around the Westinghouse turbines produced by Defendants while serving in the United States Navy . . . ." Id.[5] But here,

_____

[5] Brantley apparently contended that Westinghouse supplied turbines with little or no direction from the Navy as to product specifications.

12

Joyner expressly disclaimed any damages--giving his disclaimer real effect, unlike Brantley's. As we have no reason to believe that the state court will fail to hold Joyner to this disclaimer, it effectively precludes any defense based on the valves alone.

Crane also argues that Joyner's amendment should be disallowed as a "manipulative tactic[]" meant to evade federal jurisdiction. See Carnegie-Mellon, 484 U.S. at 357. But there is no "categorical prohibition" on such manipulation. Id. Instead, "[i]f the plaintiff has attempted to manipulate the forum, the [district] court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case." Id. Crane's bare assertion that "even if Crane Co.'s federal defense were somehow extinguished, supplemental jurisdiction remained," Appellant's Br. at 14, is insufficient to raise the issue of whether the district court abused its discretion in declining to exercise supplemental jurisdiction over the remaining claim. See Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999) ("Failure to comply with the specific dictates of this rule [requiring the reasons for contentions and citations to authorities and the record] with respect to a particular claim triggers abandonment of that claim on appeal.").

B.

Accepting the disclaimer's effect, we next consider whether Crane may properly assert any other grounds of subject matter jurisdiction. Crane primarily argues[6] that it should have been able to assert a federal defense regarding the gasket claims after Joyner amended his complaint. We think not.

As the district court noted, defendants have thirty days to file a "short and plain statement of the grounds for removal"--a window that had closed by the time Joyner amended his complaint. 28 U.S.C. § 1446(a). The court reasoned that Crane should have asserted any and all federal defenses within those thirty days. Instead, Crane explicitly refused to take a position as to whether the federal officer defense applied to the gasket claims.

1.

Crane first suggests that it should have been allowed to amend its notice of removal, pursuant to 28 U.S.C. § 1653.[7] This

---

[6] Crane also notes that the other defendants' cross-claims as to the valves remain in play, thus invoking the same defense. But, as the district court explained, because Joyner disclaimed any right to damages regarding the valves, any damages so attributed would remain beyond his reach: Crane cannot be liable to Joyner or any other defendant for that sum. The cross-claims fall with the primary claim as a matter of course.

[7] It is not clear to us that Crane made this argument before the district court. But as we explain, the contention fails on its merits.

14

argument at first seems plausible on the face of the statute, which provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." Id. But courts generally apply the thirty-day limit to this statute as well, at least in cases where the amendment is something more than a minor technical correction. See Nutter v. New Rents, Inc., No. 90-2493, 1991 WL 193490, at *2 (4th Cir. Oct. 1, 1991) ("We . . . apply the majority rule that an amendment which merely perfects a technically defective jurisdictional allegation in a timely filed removal petition may be allowed after the 30-day removal period."); see also Barrow Dev. Co. v. Fulton Ins. Co. 418 F.2d 316, 317 (9th Cir. 1969) ("[S]ince removal must be effected by a defendant within 30 days after receiving a copy of the complaint, the removal petition cannot be thereafter amended to add allegations of substance but solely to clarify 'defective' allegations of jurisdiction previously made." (internal citations omitted)); 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3733 (4th ed. 2009) ("In most circumstances, . . . defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal . . . ."). In short, "[t]he privilege of removal may be lost if it is not asserted in time and in conformity with the provisions of the statute." Richard H. Fallon, Jr. et al., Hart

15

and Wechsler's The Federal Courts and the Federal System 1433 (6th ed. 2009).

Our district courts have noted the tension between these statutes, providing for a thirty-day window on the one hand and amendment on the other. The confusion, they assert, has caused a split among our circuit's district courts. See, e.g., Covert v. Auto. Credit Corp., 968 F. Supp. 2d 746, 750 (D. Md. 2013); W. Va. v. Minn. Mining & Mfg. Co., 354 F. Supp. 2d 660, 668–69 (S.D.W. Va. 2005); Muhlenbeck v. KI, LLC, 304 F. Supp. 2d 797, 800–01 (E.D. Va. 2004).

The District of Maryland, for instance, has contrasted the "strict constructionist" school with the "liberal approach." Covert, 968 F. Supp. 2d at 750. Under the former, "amendments after § 1446(b)'s thirty-day period are allowed only for the purpose of setting forth more specifically grounds that had been imperfectly stated in the original petition; missing allegations may not be supplied nor new allegations furnished." Id. (internal quotation marks omitted). Under the liberal approach, it explains, supplemental allegations are permitted "where the imperfection in the jurisdictional allegation is a mere defect. However, even under this liberal approach if a ground for removal was completely omitted as opposed to 'imperfectly stated,' the court has no discretion to permit amendment under

16

§ 1653 and must remand the case to state court."  Id. (internal quotation marks, citations, and alterations omitted).

In our view, these two schools differ only in verbiage. The upshot is the same: after thirty days, district courts have discretion to permit amendments that correct allegations already present in the notice of removal.  Courts have no discretion to permit amendments furnishing new allegations of a jurisdictional basis.  See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 831 (1989) ("But § 1653 speaks of amending 'allegations of jurisdiction,' which suggests that it addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves."); id. at 832 ("[E]very Court of Appeals that has considered the scope of § 1653 has held that it allows appellate courts to remedy inadequate jurisdictional allegations, but not defective jurisdictional facts.  We decline to reject this longstanding interpretation of the statute." (footnote omitted)).  The trick lies in placing a case within one of those two categories.

Our precedent indicates that amendment is appropriate for technical changes, such as the exact grounds underlying diversity jurisdiction.  For instance, in Nutter, the original notice of removal claimed that the defendant was a "Kentucky corporation"; we permitted an amendment stating that Kentucky was merely the party's "principal place of business."  1991 WL

17

193490, at *2. Similarly, in Yarnevic v. Brink's, Inc., 102 F.3d 753 (4th Cir. 1996), the original petition for removal cited both federal question and diversity jurisdiction. See id. at 754. The petition listed the plaintiff's domicile as Ohio, though he had moved to Pennsylvania after filing his complaint-- but either state would have supported diversity jurisdiction. We held that "[w]hile it would have been prudent for Brink's to file a supplemental petition specifying the new basis for diversity within 30 days . . . it was not required," as the "change of domicile information simply added new evidence to rebut [the] motion to remand." Id. at 755; see also Newman-Green, 490 U.S. at 831 (explaining that "§ 1653 would apply if [a party] were, in fact, domiciled in a State other than Illinois or was, in fact, not a United States citizen, but the complaint did not so allege," but would not apply "where the complaint is amended to drop a nondiverse party in order to preserve statutory jurisdiction").

One could argue, of course, that the difference between valves and gaskets is no broader than the difference between Ohio and Pennsylvania: both relate to the factual bases underscoring the same source of jurisdiction. Here, however, the district court made clear that the valves and gaskets were being treated separately for purposes of removal. Crane nonetheless chose to preserve its position that it had not

18

supplied the gaskets.  That decision--made in open court-- suggests that Crane's failure to include gaskets as a ground for removal was no "mere inadvertence," see Clephas v. Fagelson, Shonberger, Payne & Arthur, 719 F.2d 92, 94 (4th Cir. 1983), nor a clerical error, but instead a strategic choice.  As a result, the district court correctly denied as untimely Crane's attempt to amend its notice of removal to include the gasket claims.

## 2.

Crane also argues, in a final alternative, that no amendment was necessary at all.  Once the initial removal was deemed appropriate, it posits, the notice of removal--and the contents thereof--ceased to matter.

But federal jurisdiction, in such a case, is contingent on removal.  Indeed, the statute simply provides that such a suit "may be removed by [the officer] to the district court," 28 U.S.C. § 1442(a); it "does not enlarge the original jurisdiction of the district courts," Mir v. Fosburg, 646 F.2d 342, 345 (9th Cir. 1980).  Thus, having failed to assert the specific defense it now invokes when it removed the action, Crane cannot rely on § 1442(a) as an independent jurisdictional hook.  See Mesa v. California, 489 U.S. 121, 136 (1989) ("Section 1442(a) . . . cannot independently support Art. III 'arising under' jurisdiction.  Rather, it is the raising of a federal question in the officer's removal petition that constitutes the federal

19

law under which the action against the federal officer arises for Art. III purposes.").

And none of the cases Crane puts forth require a different outcome. Crane purports to rely primarily on Jamison v. Wiley, 14 F.3d 222 (4th Cir. 1994). That case, however, is inapposite to the question at hand. In Jamison, the defendant--a federal employee accused of sexual assault--removed the case to federal court under the federal officer removal statute and the Westfall Act, asserting that he had been acting within the scope of his duties. At that time, the Department of Justice had agreed to provide his defense. At some point thereafter, the DOJ changed its mind. The district court decided, as a result, that the defendant had not been acting within the scope of his duties and that the federal officer defense was no longer meritorious, and remanded to state court.

We reversed, explaining that "removal jurisdiction exists whenever the defendant-official asserts, in his removal petition, a 'colorable' federal defense to the action." Id. at 239. Thus, Jamison stands for the innocuous proposition that later evidence regarding the merits of a defense does not impact the propriety of its pleading. Here, by contrast, we are confronted with a defense that was never adequately asserted in the first place.

20

Two other cases relied on by Crane warrant further discussion. In Willingham v. Morgan, 395 U.S. 402 (1969), the Supreme Court confronted a similar issue where defendants had asserted the federal officer defense. In his motion for remand, the plaintiff alleged that the defendants were not acting within the scope of their official duties at the time in question. The Court pointed out that "[t]he only facts in the record which in any way respond to this allegation appear in [the defendants'] affidavits in support of their motion for summary judgment." Id. at 407. In a footnote, the Court stated, "This material should have appeared in the petition for removal. However, for purposes of this review, it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits." Id. at 407 n.3. This language indicates that the notice of removal itself--rather than any subsequent docket entry--is the document to which the court must refer.

At first glance, Willingham appears to be in tension with our explanation of the impropriety of belated amendment. But a closer look reveals that the amendment permitted in Willingham went to the merits of a previously raised ground for removal, rather than the assertion of the ground itself. As the Third Circuit agreed,

21

> [t]he Supreme Court has upheld removal where jurisdictional facts required to support the removal were found in later-filed affidavits rather than in the notice of removal. . . . . [W]e are satisfied that sections 1446(a) and 1653, together with the Supreme Court's opinion in Willingham, permit a court to consider jurisdictional facts contained in later-filed affidavits as amendments to the removal petition where, as here, those facts merely clarify (or correct technical deficiencies in) the allegations already contained in the original notice.

USX Corp. v. Adriatic Ins. Co., 345 F.3d 190, 205 n.12 (3d Cir. 2003); see also Ruppel v. CBS Corp., 701 F.3d 1176, 1184 n.1 (7th Cir. 2012) ("CBS could also have amended its notice of removal and added supporting exhibits under 28 U.S.C. § 1653 . . . ." (citing Willingham)); cf. In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 488 F.3d 112, 129 (2d Cir. 2007) (noting that the defendants had not made a particular allegation in the notice of removal, "[n]or do they cite any later-filed affidavits which could provide the basis for us to treat the removal petitions as amended to include those allegations" (citing Willingham)). Thus, Willingham comports with our understanding of the importance of--and limits to--amending the notice of removal.

Williams v. Costco Wholesale Corp., 471 F.3d 975 (9th Cir. 2006), is also of no help to Crane. There, the defendant had removed on the basis of federal question jurisdiction, and when the plaintiff amended his complaint to remove the federal claim, the district court remanded. The Ninth Circuit held that the

22

remand was inappropriate because the district court had diversity jurisdiction as well--even though the defendant had not asserted diversity in its notice of removal. The court postulated that "post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court." Id. at 976. The court then held that "[o]nce a case has been properly removed, the district court has jurisdiction over it on all grounds apparent from the complaint, not just those cited in the removal notice"--grounds asserted well before the thirty-day deadline. Id. at 977 (emphasis added).

The Ninth Circuit's approach, which mirrors that of the Fifth Circuit,[8] has been criticized as contrary to well-settled practice. See Jeannette Cox, Removed Cases and Uninvoked Jurisdictional Grounds, 86 N.C. L. Rev. 937, 953–57 (2008) (arguing that the Fifth and Ninth Circuits "have failed to adequately explain their departure from the traditional approach to uninvoked jurisdictional grounds"). But even were we to

---

[8] See Buchner v. F.D.I.C., 981 F.2d 816, 818 (5th Cir. 1993) ("The fact that the FDIC waived its right to remove the instant case is irrelevant to the determination of whether the case should have or could have been remanded once it had been properly removed by another party who had not waived the right to remove.").

23

accept those principles, they do not control the result here. Contrary to Crane's view of things, we do not take the Ninth Circuit's language as carte blanche for defendants to assert new grounds for removal at any time (as was the case here), but rather an invitation for the court to look at those grounds already before it.

Our litigation system typically operates on a raise-or-waive[9] model: if a litigant fails to raise a claim in a complaint, or a defense in an answer, or to preserve an objection at trial, they are generally out of luck. This model forces efficiency and discourages sandbagging. It is thus reasonable to expect that a litigant would raise every ground for removal in his initial filing. Such a rule prevents precisely the incessant back-and-forth controversy we see here.[10] Crane made a strategic decision not to assert removal as to the

---

[9] Though "raise-or-waive" is the usual nomenclature, in reality, of course, courts--including us here--often mean "raise-or-forfeit." "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." United States v. Olano, 507 U.S. 725, 733 (1993) (internal quotation marks and citation omitted).

[10] The thirty-day window for asserting federal jurisdiction runs from the moment the grounds for such jurisdiction become apparent, rather than the filing of the complaint--thus preventing the plaintiff from sandbagging by hiding jurisdictional grounds in a first complaint and later amending it to add them. See 28 U.S.C. § 1446(b)(3).

24

gasket claims.  We usually hold parties to that sort of strategic decision, and are unable to discern why this situation would merit a departure from the general rule.

We hasten to underscore the narrowness of our holding.  It may seem unjust, at first glance, that Joyner was allowed to amend his complaint to withdraw the relevant claims, but that Crane may not respond by restructuring its defense.  But there is already a remedy in place for such a scenario: had the district court thought that Joyner's manipulative tactics were too sharp, it had every opportunity to retain the case in federal court as a matter of discretion.  "The district courts thus can guard against forum manipulation . . . ."  Carnegie-Mellon, 484 U.S. at 357 (explaining that a party's manipulative tactics are a factor the district court should weigh in deciding whether to retain the case in federal court).  We trust that they will do so.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

25