**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-1795**

———————

GREENWOOD, INC.,

        Plaintiff - Appellee,

   and

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

        Third Party Defendant - Appellee,

   v.

IES COMMERCIAL, INC., a subsidiary of IES Holdings, Inc,

        Defendant - Appellant,

   and

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA,

        Defendant.

———————

Appeal from the United States District Court for the District of South Carolina, at Greenville.  Donald C. Coggins, Jr., District Judge.  (6:21-cv-02085-DCC)

———————

Submitted:  February 10, 2023                         Decided:  April 3, 2023

———————

Before WYNN and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

————————————

**ON BRIEF:** Andrew B. Bender, ANDREWS MYERS, P.C., Houston, Texas, for Appellant.    W. Kyle Dillard, Greenville, South Carolina, Vanessa N. Garrido, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Raleigh, North Carolina, for Appellees.

————————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Cornerstone Construction, Inc. ("Cornerstone") entered into a subcontract with Appellant IES Commercial, Inc. ("IES"), who subsequently subcontracted some of its work to Appellee Greenwood, Inc. ("Greenwood"). After IES allegedly failed to remit payment for some of Greenwood's work, Greenwood commenced the instant breach of contract action against IES, who then moved to compel arbitration. The district court denied the motion, and we affirm.

"We review de novo a district court's denial of a motion to compel arbitration." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 178 (4th Cir. 2013). "[W]hether a dispute is arbitrable presents primarily a question of contract interpretation, requiring that we give effect to the parties' intentions as expressed in their agreement." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015) (internal quotation marks omitted). "In determining the parties' intent, we apply ordinary state law principles governing the formation of contracts." *Id.*

The contract between IES and Greenwood ("the Greenwood Subcontract")—which IES drafted—provided that, if either party refused to arbitrate a dispute, then the matter could be resolved through litigation. However, the Greenwood Subcontract also contained a so-called "flow-down clause," which, according to IES, incorporated by reference the arbitration clause from IES's agreement with Cornerstone ("the Master Subcontract"). And unlike the Greenwood Subcontract's dispute resolution provision, the Master Subcontract's arbitration clause did not afford the parties an arbitration veto; rather, for most disputes, arbitration was mandatory.

3

Contrary to IES's argument, Greenwood contends that the Master Subcontract's arbitration clause is inapplicable here. But we need not decide this issue. Assuming *arguendo* that Greenwood's lawsuit implicates both the dispute resolution provision and the arbitration clause, we conclude that the resulting ambiguity must be resolved in favor of litigation.

In South Carolina, whose law governs here, "[i]f a contract's language is unambiguous, the plain language will determine the contract's force and effect." *N. Am. Rescue Prod., Inc. v. Richardson*, 769 S.E.2d 237, 240 (S.C. 2015). If, on the other hand, a contract provision is ambiguous—that is, "it is capable of more than one meaning or . . . its meaning is unclear," *id.*—then the ambiguous language "should be construed liberally and interpreted strongly in favor of the non-drafting party," *S. Atl. Fin. Servs., Inc. v. Middleton*, 590 S.E.2d 27, 29 (S.C. 2003). "[W]hether a contract is ambiguous is a question of law." *Richardson*, 769 S.E.2d at 240.

The provisions at issue are in conflict: the Greenwood Subcontract's dispute resolution provision allows for arbitration if the parties so consent, whereas, for the most part, the Master Subcontract's arbitration clause makes arbitration mandatory. In spite of this, IES tries to harmonize the provisions, reasoning that the dispute resolution provision permits arbitration if the parties agree to arbitrate, and the decision to incorporate the Master Subcontract's arbitration clause—by way of the flow-down clause—reflects that the parties so agreed. But this interpretation would render much of the dispute resolution provision meaningless. *See Stevens Aviation, Inc. v. DynCorp Int'l LLC*, 756 S.E.2d 148, 153 (S.C. 2014) ("[A]n interpretation that gives meaning to all parts of the contract is

4

preferable to one which renders provisions in the contract meaningless or superfluous." (internal quotation marks omitted)).  Thus, we are unpersuaded by IES's attempt to explain away the obvious conflict between these two provisions.

So, to resolve this conflict, we construe the agreement against the drafter, IES, and hold that the dispute resolution provision—allowing for arbitration only if the parties consent—controls here.[*]  And because Greenwood does not consent, the district court was correct to deny IES's motion to compel arbitration.

As a final matter, IES argues, for the first time on appeal, that the parties agreed to delegate questions of arbitrability to an arbitrator.  In other words, having failed to convince the district court that Greenwood's breach of contract claim should be arbitrated, IES now wants someone else to decide this issue. But by not raising this issue before the district court, IES has forfeited the issue. *Stern v. Marshall*, 564 U.S. 462, 481-82 (2011); *Wood v. Crane Co.*, 764 F.3d 316, 326 (4th Cir. 2014).  We therefore decline to consider IES's unpreserved delegation argument.

---

[*] Though IES invokes the federal policy favoring arbitration, that policy does not apply where, as here, the question is whether the parties actually agreed to arbitrate a given dispute.  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("[W]e look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement."); *Wilson v. Willis*, 827 S.E.2d 167, 173 (S.C. 2019) ("The presumption in favor of arbitration applies to the scope of an arbitration agreement; it does not apply to the existence of such an agreement or to the identity of the parties who may be bound to such an agreement." (cleaned up)).

Accordingly, we affirm the district court's order.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*